# IN THE TAX COURT OF THE
# STATE OF OREGON

## HYUNDAI SEMICONDUCTOR AMERICA

*v.*

## CITY OF EUGENE,
## County of Lane

## (TC 4167)

Henry C. Breithaupt, Stoel Rives, Portland, represented Plaintiff.

William F. Gary, Harrang, Long, Gary, & Rudnick, Eugene, represented Defendant City of Eugene.

Teresa Wilson, Lane County Counsel, Eugene, filed a supporting memorandum with Defendant City of Eugene but did not argue the cause for Defendant Lane County.

Decision for Plaintiff rendered May 5, 1999.

**CARL N. BYERS, Judge.**

Plaintiff's First Amended Complaint seeks a declaratory judgment. Plaintiff claims that a condition imposed by Defendants to obtain a property tax exemption in an enterprise zone violates ORS 285.577(4).[1] In the alternative, Plaintiff claims that ORS 285.577(4) is unconstitutional. Defendants respond that Plaintiff's claim is nonjusticiable, not ripe, and that Plaintiff failed to exhaust its administrative remedies. On the merits, Defendants assert that the conditions imposed comply with the statute. There is no dispute of material fact, and the matter is before the court on cross motions for summary judgment.

---

[1] All references to the Oregon Revised Statutes are to 1995.

## FACTS

By statutes first enacted in 1985, the state authorizes the establishment of enterprise zones. The basic purpose of an enterprise zone is to attract industries that will create new jobs for the area. The primary incentive for new industries to locate in an enterprise zone is a property tax exemption for three years.

Defendants co-sponsored the establishment of the West Eugene Enterprise Zone in 1986. In 1995, Plaintiff applied for precertification, proposing to construct a plant to manufacture semiconductors. The application estimated the total cost of the plant at $1,294,500,000, to be constructed in three phases. Defendants approved the application on September 8, 1995, precertifying Plaintiff for Phase I. Plaintiff began construction of Phase I and anticipates construction of Phases II and III in the next 10 years.

At this point, two features of the rather lengthy Enterprise Zone Act become prominent. First, ORS 285.577(4) delegates authority to the sponsor of an enterprise zone to impose additional conditions for precertification. Second, if an enterprise zone terminates, then businesses already in the zone may qualify for additional tax exemptions for new construction within the boundaries of the expired zone. ORS 285.587.

The West Eugene Enterprise Zone was scheduled to terminate by operation of law at midnight on June 30, 1997. As co-sponsors, Defendants decided not to seek renewal of the zone. In addition, Defendants decided to impose an additional condition hours before the enterprise zone terminated. Each of the Defendants adopted a new resolution requiring qualified businesses to make a "public benefit contribution" of up to 15 percent of the tax exemption in order to qualify for the tax exemption.

On August 1, 1997, Plaintiff filed its original Complaint seeking a determination that the condition imposed violated ORS 285.577(4). In the alternative, if the statute was not violated, then Plaintiff asserts that the condition violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

## FIRST ISSUE

Does Plaintiff's Complaint present a justiciable issue within the jurisdiction of the Tax Court?

## ANALYSIS

The court previously addressed Defendants' arguments in its order dated May 11, 1998, denying Defendants' Motion to Dismiss. Some brief additional explanation is merited. ORS 285.597(4) clearly provides a property tax exemption. Under the Enterprise Zone Act, business firms are to apply for precertification with the zone's sponsor. If the zone sponsor fails or refuses to grant an application, then the business firm may appeal to the Department of Revenue (the department). ORS 285.613(4). Appeals from the department are to this court. Therefore, this court has subject-matter jurisdiction over this issue.

Defendants assert that Plaintiff did not exhaust its administrative remedies as required by ORS 305.275(4). That requirement, repealed effective September 1, 1997, prohibited taxpayers from appealing to the Tax Court unless they first exhausted their administrative remedies.

■ By the terms of the statutes, Plaintiff would only have a remedy to exhaust if Defendants denied its application for precertification. Plaintiff did not apply for precertification because one of the conditions was to make "a commitment to satisfy all additional conditions" imposed by the plan's sponsors. ORS 285.613(2)(e). Because it was the additional condition that Plaintiff was challenging, it could not commit to compliance. The court concludes that Plaintiff acted appropriately. The department is given only limited administrative authority by The Enterprise Zone Act. The department did not have authority to determine whether the condition imposed by Defendants violated ORS 285.577(4) or the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Therefore, Plaintiff did not have an administrative remedy to exhaust.

In addition, by the time the issue of exhaustion of administrative remedies was raised, the requirement no longer existed. By motion, Plaintiff requested the court to stay court proceedings and give it an opportunity to exhaust

its administrative remedies. Exercising its discretion, the court concluded that this was not in the best interest of the parties nor would it be a meaningful exercise. Accordingly, the court denied Plaintiff's Motion for Stay and directed these proceedings to continue to conclusion.

## SECOND ISSUE

On the merits, does the condition imposed by Defendants violate ORS 285.577(4)?

## ANALYSIS

The relevant portion of ORS 285.577(4) provides:

"Notwithstanding ORS 285.613(3), the sponsor of an urban enterprise zone may require an eligible business firm seeking precertification under ORS 285.613 within that zone to satisfy other conditions for precertification that the zone sponsor may impose that are *reasonably related to the public purpose of providing opportunities* for groups of persons, as defined by the zone sponsor, *to obtain employment*, including but not limited to provisions for training and procedures for monitoring and verifying compliance with the conditions. *Such conditions may be imposed only pursuant to a policy* adopted by the zone sponsor *that establishes standards* for the imposition of the conditions." (Emphasis added.)

In examining the actions taken by Defendants as cosponsors of the enterprise zone, the court starts with the resolutions by each, which are virtually identical in effect. The city's Resolution No. 4529 and the county's Resolution No. 97-6-30-1, impose only one additional condition on the eligible business firm: to make a "public benefit contribution" not to exceed 15 percent of the amount of the tax exemption. In light of ORS 285.577(4), the court must determine whether that condition is imposed pursuant to a "policy" that "establishes standards" for the imposition of the condition. The court must also determine whether the "condition" is "reasonably related" to the public purpose of the statute.

■ To apply the statute, the court must first construe it. That is to be done in accordance with the principles and guidelines laid down by the Oregon Supreme Court in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143

(1993). Acknowledging that the court's objective is to discern the intent of the legislature, the first level of analysis is to consider the text and the context of the statute itself. In making that examination, the court follows "the rule that words of common usage typically should be given their plain, natural, and ordinary meaning." *Id.* at 611.

Here, the critical words used in ORS 285.577(4) are of common usage and are used unambiguously. Specifically, the statute anticipates a "policy" adopted by the zone's sponsor. A policy implies a statement of general principles or values by which a government is guided in its management of public affairs or the legislature in its measures. *See Black's Law Dictionary*, 1157 (6th ed 1990). The word "policy" indicates that the legislature is delegating discretion to the sponsor of an enterprise zone with regard to designing the conditions to accomplish the purposes.

> "Policymaking terms are those which empower the agency to develop and expound its own vision of how a law or a scheme of regulation should be applied." *Trebesch v. Employment Division*, 300 Or 264, 271, 710 P2d 136 (1985).

Neither of the resolutions states a policy as such. Each of the resolutions makes findings and sets forth procedures and factors to be considered. Neither contains a statement of policy. However, by considering the cumulative effect of the resolution, the documents imply a policy. By determining that they will not apply for continuation of the enterprise zone and by imposing a condition for allowing exemption of future investments, the co-sponsors have expressed a policy of no longer encouraging this enterprise zone. By requiring a contribution, Defendants may be viewed as discouraging investment in the enterprise zone. ORS 285.577(4) does not require the "policy" to encourage or support an enterprise zone.

A more difficult question is whether the policy "establishes standards for the imposition of the conditions." A standard is a form of measure, method or rule that provides a basis for determining or judging something. In the case of a tax or contribution, it would be a method of determining the liability or obligation and the amount in some specific way so that it could be viewed as not arbitrary or capricious.

■ The resolutions set forth factors to be considered, but they do not contain standards. The resolutions establish an enterprise zone committee, which is to conduct a public hearing and receive input. After considering the input and seven factors, the committee makes a determination of the amount that should be contributed. That determination, however, is only a recommendation to the governing bodies of each of the co-sponsors. Those governing bodies may accept the committee's recommendation or they may choose a different amount. The only limitation imposed is that, if the two governing bodies do not agree, then the amount shall be the lesser of the committee's recommendation or 10 percent of the tax exemption.

The court may presume that the enterprise zone committee and the governing bodies of the sponsors will act in good faith; however, there are no boundaries, measures, rules, or principles to guide their decision. More importantly, it would be impossible under these resolutions for the eligible business to calculate or estimate the amount of required contribution, if any. The court finds that the resolutions, to the extent that they constitute a statement of policy, do not establish standards for the impositions of the condition.

Even if the court assumes the condition is imposed pursuant to a policy that establishes standards, it does not appear that the condition is "reasonably related to the public purpose of providing opportunities for groups of persons, as defined by the zone sponsor, to obtain employment." ORS 285.577(4).

The term "reasonably related" is not defined and is a term that shows up in different contexts. *See, e.g., Dolan v. City of Tigard*, 317 Or 110, 854 P2d 437 (1993); *State v. Strawn*, 154 Or App 460, 963 P2d 34 (1998). There are no limitations in the resolutions on the use of the funds. The resolutions address only the question of allocation of the contribution between the Defendants as co-sponsors and educational institutions. Not only is the allocation discretionary within limits, it is unrelated in any way to the public purposes of providing opportunities for employment.

■■ The clear legislative intent was that there must be some reasonable relationship between a condition imposed

and the purposes of the act. The specific examples set forth in the act are "provisions for training and procedures for monitoring and verifying compliance with the conditions." Those conditions are clearly and directly related to accomplishing those purposes. ORS 285.577(4). The test is not whether the sponsor can require a money payment but, if a simple money payment is required, what uses will be made of that payment. Here, there are no limitations on the uses to be made of the public contribution. The county may use its portion of a contribution to buy a police car, the city to install a sewer-control valve, and an educational institution to fund an athletic program. The legislature must have meant something when it said "reasonably related." To say it another way, Defendants' condition, if upheld, would render the legislative requirement meaningless. Simply requiring a monetary payment to local government is not a condition that bears a reasonable relationship to the public purpose of creating job opportunities.

Defendants point out that two subsequent twin resolutions addressed this concern. Each of the co-sponsors enacted a resolution on July 9, 1997, directing the Enterprise Zone Committee to hold public hearings and develop a point system that would remove all subjectivity from the process of determining the amount of the contribution. Again, however, the Enterprise Zone Committee's determination was simply a recommendation to the governing bodies of each of the co-sponsors. Those governing bodies may either adopt the recommendation or any other point system.

By resolutions dated December 1, 1997, Defendants adopted a point system and authorized the city manager to develop rules to further define and implement that system.

Plaintiff contends that neither of these two resolutions is applicable because a sponsor's authority to impose conditions ends with the termination of the zone. ORS 285.587(2)(b) states:

"* * * The precertified or qualified business firm must comply with the requirements for an existing business under ORS 285.590 to 285.617 *in effect at the time of termination* of the enterprise zone." (Emphasis added.)

■ The point system was not in effect at the time of termination. Defendants contend that the two resolutions adopted after July 30, 1997, were only for clarification of the resolution adopted June 30, 1997. The court disagrees. The point system was an attempt to add the standards required by ORS 285.577(4). Such standards had to be in effect on the date the enterprise zone terminated. As pointed out above, without the point system, the June 30, 1997, resolutions did not establish standards for the imposition of the condition.

■ In summary, the court concludes that the condition imposed was not "reasonably related" to the public purpose of creating job opportunities and was not imposed under a policy that established standards for its imposition. Subsequent actions by the zone sponsors after the zone terminated were too late and by the terms of ORS 285.587(2)(b) are not applicable. Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is granted, and

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is denied. Costs to neither party.