Argued and submitted September 11, 2000, decision of Tax Court vacated; case remanded to Tax Court with instructions July 6, 2001

## HYUNDAI SEMICONDUCTOR AMERICA,
### *Respondent,*

*v.*

## CITY OF EUGENE,
## County of Lane,
### *Appellants.*

## (OTC 4167; SC S46528)

27 P3d 124

William F. Gary, of Harrang Long Gary Rudnick P.C., Eugene, argued the cause and filed the briefs for appellants. With him on the briefs were Glenn Klein and Judith Giers, of Harrang Long Gary Rudnick P.C., and Teresa J. Wilson and David B. Williams, of the Lane County Office of Legal Counsel.

Robert T. Manicke, of Stoel Rives LLP, Portland, argued the cause and filed the brief for respondent. With him on the brief were Henry C. Breithaupt and Richard S. Gleason.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

RIGGS, J.

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz, J., did not participate in the consideration or decision of this case.

**RIGGS, J.**

In this tax case, plaintiff challenges a condition imposed by defendants on applicants for a property tax exemption in an enterprise zone. On summary judgment motions, the Oregon Tax Court ruled that the condition violated ORS 285.577(4) (1995) (set out below).[1] *Hyundai Semiconductor America v. City of Eugene*, 14 OTR 557, 565 (1999). For the reasons that follow, we conclude that plaintiff failed to exhaust its administrative remedies. We therefore vacate the decision of the Tax Court and remand the case to that court with instructions to dismiss the complaint.

The following undisputed facts are taken from the Tax Court's opinion:

"By statutes first enacted in 1985, the state authorizes the establishment of enterprise zones. The basic purpose of an enterprise zone is to attract industries that will create new jobs for the area. The primary incentive for new industries to locate in an enterprise zone is a property tax exemption for three years.

"Defendants co-sponsored the establishment of the West Eugene Enterprise Zone in 1986. In 1995, Plaintiff applied for precertification,[2] proposing to construct a plant to manufacture semiconductors. The application estimated the total cost of the plant at $1,294,500,000, to be constructed in three phases. Defendants approved the application on September 8, 1995, precertifying Plaintiff for Phase I. Plaintiff began construction of Phase I and anticipates construction of Phases II and III in the next ten years.

"At this point, two features of the rather lengthy Enterprise Zone Act become prominent. First, ORS 285.577(4) delegates authority to the sponsor of an enterprise zone to impose additional conditions for precertification. Second, if an enterprise zone terminates, then businesses already in

---

[1] Unless otherwise noted, all Oregon statutory citations in this opinion are to the 1995 statutes.

[2] To receive the enterprise zone tax exemption, a business must apply to the zone sponsor or sponsors—here, defendants—for precertification before the business starts construction or hires employees. ORS 285.613(1). After completing construction, a precertified business may apply for the exemption. ORS 285.615(1).

the zone may qualify for additional tax exemptions for new construction within the boundaries of the expired zone. ORS 285.587.

"The West Eugene Enterprise Zone was scheduled to terminate by operation of law at midnight on June 30, 1997. As co-sponsors, Defendants decided not to seek renewal of the zone. In addition, Defendants decided to impose an additional condition hours before the enterprise zone terminated. Each of the Defendants adopted a new resolution [(the June resolutions)] requiring qualified businesses to make a 'public benefit contribution' of up to 15 percent of the tax exemption in order to qualify for the tax exemption."

*Hyundai,* 14 OTR at 559.

The June resolutions also authorized the formation of a committee that, in any given case, would consider seven factors and recommend to defendants the appropriate amount of a qualifying business's public benefit contribution.[3] Under the June resolutions, however, defendants' governing bodies could select an amount different from the committee's recommendation. If defendants disagree on an amount, then the amount would be the lesser of the committee's recommendation or 10 percent of the tax exemption. The June resolutions provided that 40 percent of the funds raised from public benefit contributions would be allocated to defendant county, 40 percent to defendant city, and the remaining 20 percent would be allocated "among the City, County and local education services, including Section 501(c)(3) tax exempt education foundations."

Through identical resolutions passed in July and December 1997, defendants each adopted a point system for the seven factors. That point system, which accords different

---

[3] Those seven factors are: (1) the extent to which the business hires from local training or referral agencies; (2) the extent to which the business hires persons with barriers to employment; (3) the extent to which wages for new jobs are greater than the average county wage; (4) the extent to which the business dedicates funds to nonmandatory training and benefits; (5) whether the business is using a previously developed site or a brownfield site; (6) the extent to which the assessed value of the new investment exceeds $500,000 per acre; and (7) whether the business is a small business or a local business.

weight to the various factors, exempts a business from the public benefit contribution if it scores 80 points or higher. For example, a business receives 25 points if its average wage for all new jobs is between 100 percent to 110 percent of the average county wage; 35 points if its average is between 110 percent to 115 percent; and 40 points if its average is greater than 115 percent. By contrast, the most a business can receive under the factor regarding assessed value is one point. The July and December resolutions also clarified several of the seven factors (*e.g.*, explaining that a "small business" means 50 or fewer people).

On August 1, 1997, plaintiff filed its complaint in the Tax Court. In its first claim, plaintiff sought a declaration that the public benefit contribution requirement in the June resolutions violated ORS 285.577(4).[4] In its second claim, plaintiff sought a determination that the public benefit contribution was a tax within the meaning of Article XI, section 11b(2)(b), of the Oregon Constitution, and thus, was subject to the limits of Article XI, sections 11 and 11b, of the Oregon Constitution (Measure 5 claim).[5] Third, plaintiff sought a

---

[4] ORS 285.577(4) provides:

"Notwithstanding ORS 285.613(3), the sponsor of an urban enterprise zone may require an eligible business firm seeking precertification under ORS 285.613 within that zone to satisfy other conditions for precertification that the zone sponsor may impose that are reasonably related to the public purpose of providing opportunities for groups of persons, as defined by the zone sponsor, to obtain employment, including but not limited to provisions for training and procedures for monitoring and verifying compliance with the conditions. Such conditions may be imposed only pursuant to a policy adopted by the zone sponsor that establishes standards for the imposition of the conditions. Conditions imposed by a zone sponsor under this subsection shall be in addition to, and not in lieu of, conditions and requirements imposed under ORS 285.560 to 285.617 and shall not affect the duties of the Department of Revenue under ORS 285.593 or of the county assessor under ORS 285.595."

[5] In 1990, the voters adopted an initiative measure (Ballot Measure 5) that amended the Oregon Constitution by adding Article XI, section 11b. *See City of Portland v. Smith*, 314 Or 178, 182, 838 P2d 568 (1992) (so stating). Measure 5 limited property taxes as follows:

"[T]axes imposed upon any property shall be separated into two categories: One which dedicates revenues raised specifically to fund the public school system and one which dedicates revenues raised to fund government operations other than the public school system. The taxes in each category shall be limited as set forth in the table which follows and these limits shall apply whether the taxes imposed on property are calculated on the basis of the value of that property or on some other basis:

declaration that, if the public benefit contribution is valid under ORS 285.577(4), then that statute violates Article I, section 32, and Article IX, section 1, of the Oregon Constitution (the Uniformity Clauses); Article I, section 20, of the Oregon Constitution (the Equal Privileges and Immunities Clause); and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.[6]

Defendants moved to dismiss, arguing, *inter alia*, that plaintiff's claims are not ripe and that plaintiff had failed to exhaust its administrative remedies. Plaintiff responded by moving to stay proceedings in the Tax Court so that plaintiff could bring its first and third claims before the Department of Revenue (department). The Tax Court ruled

"MAXIMUM ALLOWABLE TAXES

"For Each $1000.00 of
Property's Real Market Value

| "Fiscal Year | School System | Other than Schools |
|---|---|---|
| "* * * * * | | |
| "1995-1996 and thereafter | $ 5.00 | $10.00" |

Or Const, Art XI, § 11b(1). Article XI, section 11(11)(b), of the Oregon Constitution, modifies Article XI, section 11b, in the following respect:

"The $5 (public school system) and $10 (other government) limits on property taxes per $1,000 of real market value described in subsection (1) of section 11b of this Article shall be determined on the basis of property taxes imposed in each geographic area taxed by the same local taxing districts."

[6] Article I, section 32, of the Oregon Constitution, provides, in part:

"[A]ll taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."

Article IX, section 1, of the Oregon Constitution, provides:

"The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State."

Article I, section 20, of the Oregon Constitution, provides:

"No law shall be passed granting to any citizen or class of citizens privileges, or immunities, which, upon the same terms, shall not equally belong to all citizens."

The Fourteenth Amendment to the United States Constitution, provides, in part:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

that plaintiff's claims were ripe. The court denied plaintiff's motion for a stay, reasoning that, under ORS 305.580,[7] plaintiff's Measure 5 claim was entitled to immediate review and, although plaintiff normally should have exhausted its administrative remedies as to its first and third claims, the court would consider all the claims together to foster judicial economy. In a separate order entered that same day, the court dismissed plaintiff's Measure 5 claim.

On the parties' subsequent motions for summary judgment, the Tax Court held that the public benefit contribution requirement was invalid under ORS 285.577(4) because the June resolutions had failed to establish standards for the imposition of the contribution and because the contribution is not reasonably related to providing job opportunities. Accordingly, the court declared all defendants' resolutions pertaining to the public benefit contribution void and further declared that plaintiff is not required to pay any public benefit contribution. Defendants appealed. At issue in this court is whether the Tax Court erred in ruling that the public benefit contribution requirement violated ORS 285.577(4). Neither plaintiff's Measure 5 claim nor its claim that ORS 285.577(4) is unconstitutional is before us on appeal.

■ The parties first dispute whether plaintiff's claim is ripe for judicial determination. We have reviewed the record and the arguments of counsel, and we conclude that the case is ripe. Plaintiff is a business in the West Eugene Enterprise Zone and is qualified to apply for an additional enterprise zone tax exemption in connection with new construction. Defendants assert the right to impose the public benefit contribution on businesses in the position of plaintiff. Plaintiff's

---

[7] ORS 305.580 provides:

"(1) The provisions of ORS 305.583, 305.585, 305.587 and 305.589 shall provide the exclusive remedy for determination of questions concerning the effect of the limits of section 11b, Article XI of the Oregon Constitution on taxes, fees, charges and assessments of units of government.

"(2) A petition filed with the Oregon Tax Court pursuant to ORS 305.583, 305.585, 305.587 or 305.589 shall have priority over all other cases pending before the Oregon Tax Court and shall be heard and decided as soon after coming to issue as is reasonably possible."

Moreover, the statute requiring exhaustion of administrative remedies, ORS 305.275(4), expressly exempts Measure 5 claims.

interest in obtaining a favorable declaration is manifested not only by the threat of being required in the future to make a public benefit contribution, but also by a present incentive to minimize any payment by adjusting its conduct before applying for precertification. This case is ripe.

We turn to defendants' argument that plaintiff has failed to exhaust its administrative remedies. ORS 305.275(4) (1995) precludes a party from appealing to the Tax Court unless it has exhausted its administrative remedies:

> "Except as provided in ORS * * * 305.580 to 305.591 [relating to Measure 5 claims], no person shall appeal to the Oregon Tax Court or other court on any matter arising under the revenue and tax laws administered by the department unless the person first exhausts the administrative remedies provided before the department and the director."[8]

There is no dispute that plaintiff did not present its claims to the department before filing in the Tax Court.

Plaintiff argues that it had no adequate administrative remedy to exhaust and, alternatively, that judicial economy would not be served by requiring exhaustion here. Defendants disagree, relying on this court's decision in *Nutbrown v. Munn*, 311 Or 328, 811 P2d 131 (1991). Plaintiff responds that *Nutbrown* is distinguishable. Because *Nutbrown* is pivotal to our disposition of this case, we discuss it in detail below.

---

[8] The 1995 Legislature amended ORS 305.275 and eliminated the exhaustion requirement. Or Laws 1995, ch 650, § 7. The amendment to ORS 305.275 was part of the 1995 Legislature's reorganization of the tax appeals process. *See Delta Air Lines, Inc. v. Dept. of Rev.*, 328 Or 596, 602, 984 P2d 836 (1999) (stating that legislative amendments in Oregon Laws 1995, chapter 650, were part of reorganization of tax appeals process). Specifically, the legislature replaced the departmental hearings process with a new process established in the magistrate division of the Tax Court. *Id.*; *see* Or Laws 1995, ch 650, § 2 (establishing magistrate division).

The operative date of the changes to the tax laws set out in chapter 650 was September 1, 1997. Or Laws 1995, ch 650, § 116. Plaintiff filed this case in the Tax Court before that date. We have found nothing in the text or context of Oregon Laws 1995, chapter 650, that indicates that the legislature intended to excuse parties who filed complaints in the Tax Court before the operative date of the 1995 amendments from complying with the pre-amendment exhaustion requirement. The parties do not argue otherwise.

In *Nutbrown*, the plaintiffs had filed a complaint in the Tax Court alleging claims for refund, claims in quasi-contract, claims in constructive trust, claims for an order setting aside certain tax payments already made, and claims for violation of their civil rights under 42 USC § 1983. On the latter claim, they sought declaratory and injunctive relief and damages. *Id.* at 331. The gravamen of their complaint was a constitutional challenge under the doctrine of intergovernmental tax immunity to a statutory scheme under which the state taxed federal retirees' pension benefits while exempting state retirees' pension benefits. The United States Supreme Court recently had held that a similar state taxing system was unconstitutional, *Davis v. Michigan Dept. of Treasury*, 489 US 803, 817, 109 S Ct 1500, 103 L Ed 2d 891 (1989), and the taxpayers relied heavily on *Davis* in pressing their claims. *Nutbrown*, 311 Or at 335.

On appeal, the only issue in *Nutbrown* was the section 1983 claim, which "may [have been] due to the fact that all of [the] Taxpayers' other claims involve state law theories and clearly are subject to the exhaustion requirements of ORS 305.275(4)." *Id.* at 337 n 5. After holding that requiring taxpayers to exhaust their administrative remedies with respect to their section 1983 claim was consistent with the federal constitution,[9] this court gave examples of the kinds of remedies of which the taxpayers could have availed themselves:

[9] The taxpayers in *Nutbrown* had argued that, with regard to cases brought under 42 USC § 1983, states may not erect procedural barriers to vindication of rights under that statute. *See Felder v. Casey*, 487 US 131, 141, 108 S Ct 2302, 101 L Ed 2d 123 (1988) (prohibiting states from applying notice-of-claim requirement to section 1983 actions in its courts); *Patsy v. Florida Board of Regents*, 457 US 496, 516, 102 S Ct 2557, 73 L Ed 2d 172 (1982) (rejecting argument that section 1983 claimant should have exhausted administrative remedies before filing in federal district court). Relying on *Fair Assessment in Real Estate Ass'n v. McNary*, 454 US 100, 102 S Ct 177, 70 L Ed 2d 271 (1981), this court ruled that the holdings in *Felder* and *Patsy* did not extend to a section 1983 action that challenged a state tax system. *Nutbrown*, 311 Or at 340. In *McNary*, the Court had held that a federal district court could not entertain a section 1983 action that involved the validity of a state tax system. A majority of the Court based that decision on principles of comity. *McNary*, 454 US at 116. Four justices concurred on the ground that the Tax Injunction Act, 28 USC § 1341, indicated a congressional intent to limit the availability of section 1983 actions respecting questions of state tax administration to those in which administrative remedies had been exhausted. *McNary*, 454 US at 137 (Brennan, J., concurring).

> "Administrative remedies available to the Taxpayers include a request for declaratory and injunctive relief, as well as for refunds. We do not read ORS 305.275(4) so narrowly as to limit the scope of the exhaustion requirement to those cases where the revenue system has generated a ruling that can be appealed. If the law provides an adequate administrative remedy, then ORS 305.275(4) requires that it be exhausted before a court challenge may be prosecuted."

*Id.* at 342-43 (footnote omitted). The court then quoted in full ORS 305.105, which provides:

> "The Department of Revenue in its discretion may, on petition by any interested person, issue a declaratory ruling with respect to the applicability to any person, property or state of facts of any rule or statute enforceable by it. The department shall prescribe by rule the form, content and procedure for submission, consideration and disposition of such petitions. Full opportunity for hearing shall be afforded to interested parties. A declaratory ruling shall bind the department and all parties to the proceedings on the state of facts alleged, unless it is altered or set aside by a court. A ruling shall be subject to review in the Oregon Tax Court and Supreme Court in the manner provided by ORS 305.445."

*Id.* at 343.

The *Nutbrown* court next considered the taxpayers' arguments that the administrative remedy was inadequate. The court first rejected the argument that, because the department could not afford them *all* the relief that they sought—the department had no authority to award either damages under 42 USC § 1983 or punitive damages—the taxpayers nonetheless were required to exhaust administrative remedies because the department *did* have the authority to declare the current tax system unconstitutional. If the taxpayers had obtained that relief, then they would not have had a claim under section 1983, *id.* at 345; until the taxpayers obtained that relief, punitive damages were not relevant, *id.* at 346. The *Nutbrown* court also rejected the taxpayers' argument that exhaustion would have been futile in light of the department's summary denial of their claims for refunds and the department's arguments that *Davis* was decided

incorrectly. The court stated that those allegations did not demonstrate the kind of "implacable hostility" that might have allowed the taxpayers to bypass their administrative remedies. *Id.* at 347. Finally, the court dismissed the taxpayers' contention that they should be excused from the exhaustion requirement because the objectives underlying the requirement could not be served: "If Taxpayers exhaust their administrative remedies and, in the process, obtain the relief under the Oregon personal income tax laws that they seek, the need for this § 1983 litigation vanishes. That is a sufficient reason to require exhaustion." *Id.* at 348 (footnote omitted).

■    *Nutbrown* stands for the proposition that the declaratory ruling procedure in ORS 305.105 is an administrative remedy under ORS 305.275(4) that a party must exhaust before filing a declaratory judgment action in the Tax Court.

■    Plaintiff attempts to distinguish *Nutbrown* in three ways. First, plaintiff argues that the defendants in *Nutbrown* were associated with the department and were precluded from appealing an adverse declaratory ruling, whereas here, defendants can appeal an adverse declaratory ruling and order. Thus, plaintiff reasons, no judicial resources would be spared by applying the exhaustion requirement, because both parties can seek further review. We reject plaintiff's argument: The possibility of judicial review does not excuse the failure to exhaust administrative remedies.

■    Second, plaintiff argues that judicial economy, which is one of the objectives of the exhaustion requirement, was served best by the Tax Court's retention of plaintiff's first and third claims (which the Tax Court recognized were subject to exhaustion), along with its Measure 5 claim (which was exempt from the statutory requirement of exhaustion). Plaintiff cites no authority for the Tax Court's exercise of that sort of supplemental jurisdiction, be it for judicial economy or for any other reason, and we have found none. *Cf.* 28 USC § 1367(a) (providing federal district courts with supplemental jurisdiction over claims that form part of same case or controversy as claims within court's original jurisdiction). The presence of a Measure 5 claim in a complaint does not excuse

noncompliance with ORS 305.275(4) with respect to non-Measure 5 claims in the same complaint, and the Tax Court had no discretion under that statute to rule otherwise.

Finally, plaintiff argues that, because the 1995 Legislature amended ORS 305.275 to eliminate the exhaustion requirement, plaintiff's failure to exhaust should be excused because it is "unlikely that the Court will again face an exhaustion issue arising under that statute." That argument is not well taken. The likelihood of an issue arising again has no bearing on whether plaintiff should be excused from complying with applicable law and exhausting its remedies in this case. At the time that plaintiff filed its complaint, ORS 305.275(4) was the law, and plaintiff failed to comply with it.

In sum: (1) this case is ripe, and (2) ORS 305.275(4) required plaintiff to exhaust its administrative remedies before filing its complaint in the Tax Court, but plaintiff failed to do so. The Tax Court had no discretion to reach the merits of plaintiff's claim. That court should have dismissed the case. *See Morris v. Dept. of Rev.*, 320 Or 579, 586, 889 P2d 1294 (1995) (vacating Tax Court's decision that reached merits of taxpayer's claim, because taxpayer failed to exhaust administrative remedies).

The decision of the Tax Court is vacated. The case is remanded to the Tax Court with instructions to dismiss the complaint.