88 March 30, 2020 No. 6

IN THE OREGON TAX COURT
REGULAR DIVISION

CHARTER COMMUNICATIONS
HOLDING COMPANY, LLC,
a Delaware limited liability company;
Falcon Cable Systems Company II, L.P.,
a California limited liability partnership
(dba Charter Communications);
Falcon Community Cable, L.P.,
a Delaware limited partnership
(dba Charter Communications); and,
Falcon Cablevision, L.P.,
a California limited partnership
(dba Charter Communications),
*Plaintiffs*,

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 5361 (Control); TC 5362-69; TC 5394)

In this case concerning centrally assessed property, Plaintiffs (taxpayers) objected to the Department of Revenue's (the department's) treatment of all their property as "new property," including property that had been centrally assessed the prior year. The department argued for the dismissal of this argument on "issue exhaustion" grounds because taxpayers had failed to raise the issue during the administrative conferences with the department required by ORS 308.584. The court, applying the framework set out in *Tuckenberry v. Board of Parole*, 365 Or 640, 451 P3d 227 (2019), held that issue exhaustion was not required in this case. The court found "no legislative intent, or prudential consideration, that would preclude litigation of issues not raised or fully addressed" in the process described in ORS 308.584.

Oral argument on Defendant's motion for partial dismissal was held January 10, 2020, in the courtroom of the Oregon Tax Court, Salem.

Marilyn J. Harbur, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and argued the cause for Defendant Department of Revenue.

Daniel H. Schlueter, Eversheds Sutherland (US), LLP, Washington, D.C., filed the response and argued the cause for Plaintiffs.

Decision rendered March 30, 2020.

## ROBERT T. MANICKE, Judge.

### I.    INTRODUCTION

In these consolidated cases involving centrally assessed property, Defendant (the department) asks the court to dismiss one of the claims of Plaintiffs (collectively, "taxpayer") on the ground that taxpayer failed to adequately raise that claim in a conference before the department's director pursuant to ORS 308.584.[1] The motion applies to taxpayer's claim that the department erroneously treated *all* of taxpayer's property as "new property" for Measure 50 purposes, including telephone property that the department had centrally assessed for the prior year.[2] Taxpayer acknowledges that some of its property was "new property" under *DISH Network*, but taxpayer claims that "the [d]epartment improperly included the value of [taxpayer's] telephone property more than once in determining the value of [taxpayer's] maximum assessed value" for each of the Subject Years. The department does not dispute that taxpayer requested and participated in a conference in the summer of each Subject Year during the annual statutory window for doing so, starting in 2009,[3] but the department asserts that "plaintiff raised no issue" in any of the conferences "in regard to [taxpayer's] property not being 'new

---

[1] Unless otherwise indicated, citations to the Oregon Revised Statutes (ORS) are to the 2009 edition. The periods at issue in the consolidated cases are the 10 tax years 2009-10 through 2015-16 and 2017-18 through 2019-20. (*See* Plaintiff's Table of Claims and Tax Years at Issue ("Table of Tax Years").) There is a one-year gap in the sequence because taxpayer filed no complaint for tax year 2016-17. The Magistrate Division held all but the most recent cases in abeyance pending the Oregon Supreme Court's decisions in *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 337 P3d 768 (2014), and *DISH Network Corp. v. Dept. of Rev.*, 364 Or 254, 434 P3d 379 (2019). In 2019, after the Magistrate Division reactivated the cases, the Regular Division accepted them for hearing by special designation.

[2] The department's motions to dismiss cover an eight-year subset of the 10 tax years, tax years 2009-10 through 2015-16 and 2017-18, and for purposes of this order the court refers to that subset as the "Subject Years." The claim that the department seeks to dismiss appears as Claim 2 in the amended complaints for tax years 2009-10 through 2013-14 and as Claim 4 in the amended complaints for tax years 2014-15, 2015-16, and 2017-18.

[3] For example, the department notes concessions it made upon receiving additional information from taxpayer in response to the first notice of tentative assessment it issued in 2009.

property'[4] or double counting of such telephone property[5] in the department's calculation of MAV."

## II.   ISSUE

Should the court dismiss taxpayer's claim on "issue exhaustion" grounds?

### A.   Tuckenberry *Framework*

*Tuckenberry* provides a framework for analyzing whether and how "issue exhaustion" applies where the legislature has expressly required exhaustion of administrative remedies. "Issue exhaustion" is "'the requirement that a party must have objected before the agency to errors he asserts on judicial review ***.'" *Tuckenberry*, 365 Or at 646 (quoting *Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977)). Issue exhaustion is not necessarily required merely because a statute or a court requires exhaustion of administrative remedies. *See Sims v. Apfel*, 530 US 103, 107, 120 S Ct 2080, 147 L Ed 2d 80 (2000) (rejecting government's argument that issue exhaustion is a corollary of any requirement of exhaustion of administrative remedies).

*Tuckenberry* involved ORS 144.335, which allowed an offender under the jurisdiction of the State Board of Parole and Post-Prison Supervision to seek judicial review of a board order if the person was aggrieved by the order and had "exhausted administrative remedies as provided by board rule." *Tuckenberry*, 365 Or at 648 (quoting ORS

---

[4] The department also asserts, as an alternative ground for dismissal of the same claim, that the issue is moot because in the department's answers to taxpayer's amended complaints the department asserted a lower maximum assessed value than shown in its opinion and order. The court agrees with taxpayer that the relatively modest reduction reflected in the department's answers does not render taxpayer's claim of double-counting of telephone property moot in any of the tax years.

[5] Briefing on the department's motion appears in several rounds of filings in the record. Shortly after the decision in *DISH Network*, taxpayer moved to amend its complaints, and the department resisted, raising objections similar to those now before the court. The court allowed taxpayer to amend its complaints, and the department included motions to dismiss in its answers to the amended complaints. During the time for briefing on the department's motion, the Oregon Supreme Court issued its decision in *Tuckenberry v. Board of Parole*, 365 Or 640, 451 P3d 227 (2019), and this court directed the parties in this case to file additional briefs applying that decision.

144.335). The petitioner was an offender seeking relief from a special condition of his release that he "not enter into or participate in any intimate relationship" without permission from his parole officer. *Id.* at 643. The petitioner asserted that he sought to be a better father to his daughter and to be in her life. *Id.* at 643-44. The board denied relief, and the petitioner appealed on the grounds that the restriction was overly broad and unconstitutionally vague.

The court applied the *Gaines* framework to determine to what extent the statute imposed an issue exhaustion requirement. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Starting with the text, the court concluded that the administrative rules referred to in the statute required an offender to identify to the board the "specific ways" in which the offender thought the board had acted in error. *Tuckenberry*, 365 Or at 649-50 (citing administrative rule requiring offender to provide the board a "plain and concise statement of the points for which the offender wants review, specifically identifying" the board's alleged errors). Nonetheless, after examining the limited legislative history, the court concluded that ORS 144.335 "does not impose a *statutorily required* limitation on the *issues that may be raised on judicial review*." *Id.* at 652 n 4 (first emphasis in original; second emphasis added). Instead, the court concluded that "the statute's issue-exhaustion requirement is not uniquely and strictly fashioned for the board, but instead remains flexible under general prudential exhaustion principles." *Id.* at 652.

Having found no legislative intention to deviate from general prudential principles regarding the scope of judicial review, the court next applied those principles to determine whether judicial review of issues not expressly raised before the board was precluded. The court first considered the rationale underlying the issue exhaustion doctrine. In litigation in the courts, the prudential requirement of issue exhaustion serves two purposes: forcing development of the evidentiary record and fostering procedural fairness. *Id.* at 653. Because trial courts operate within an adversarial system, each party is responsible to present the facts and legal arguments that favor that party, and the exhaustion requirement helps to ensure that each party fulfills that

responsibility. By contrast, the court found that proceedings before the board generally were not fully adversarial, because the board had broad authority to consider "evidence of its own choosing," which need not include an interview of the offender, and because the board was not required to conduct a hearing. *Id.* at 653-54. The court concluded that the rationale for requiring issue exhaustion was less applicable to board proceedings.

The court declined to rely solely on the relatively nonadversarial nature of board proceedings, however, and turned instead to three prudential factors. First, the court found that the offender "provided at least a general description of his concerns to the board"; this was all that could be expected given the offender's lack of representation and limited education. *Id.* at 654-55. Second, the court found that the offender raised "important issues of public interest" concerning the scope of the board's authority. *Id.* at 655. Finally, the court found that raising the issues more specifically would likely have been futile. *Id.* The court concluded that the doctrine of issue preclusion did not bar judicial review of the petitioner's claim.

## III. ANALYSIS

Taxpayer argues that (1) ORS 308.584 does not require "issue exhaustion"; (2) in any event, taxpayer adequately raised the issue in the conference before the department's director; (3) if issue exhaustion was required and taxpayer did not adequately raise the issue, the court should relax the issue exhaustion requirement; and (4) if taxpayer does not prevail on any of its first three arguments the court should remand the claim to the director, not bar taxpayer from having it adjudicated. The department contests each argument. The court considers these arguments within the *Tuckenberry* framework.

B.  *Did the legislature intend to require issue exhaustion?*

Taxpayer proffers a *Gaines* analysis of ORS 308.584, arguing that the text, context, and legislative history show that the legislature did not intend to bar a taxpayer from litigating in this court an issue not raised in a director

conference. Enacted in 2007 and unchanged since then, ORS 308.584 provides:

> "(1)   A person or company receiving a notice of tentative assessment under ORS 308.582 may *make a request for a conference on the reduction in valuation or modification of the apportionment* of a tentative assessment set forth in the notice.
>
> "(2)   The request shall be made to the Director of the Department of Revenue on or before June 15 of the assessment year. If the Department of Revenue failed to properly mail the notice described in ORS 308.582 to the person or company, a request for a conference may be made on or before June 25 of the assessment year, but may not be made thereafter.
>
> "(3)   The director shall hold a conference under this section as soon as is practicable following the date a request is made and shall issue an *order modifying the valuation or apportionment of an assessment or affirming the tentative assessment* on or before August 1 of the tax year.
>
> "(4)   *A conference with the director is an administrative remedy that must be exhausted before an appeal of the valuation or apportionment of an assessment may be made to the Oregon Tax Court. The valuation or apportionment of an assessment under ORS 308.505 to 308.665 may not be appealed to the tax court if the person or company does not file a timely request for a conference under this section prior to seeking an appeal before the tax court.*
>
> "(5)   Subject to subsection (4) of this section, an appeal to the tax court may be made under ORS 305.280.
>
> "(6)   A petition may not be filed with a county board of property tax appeals for a reduction in value of property assessed under ORS 308.505 to 308.681 or with respect to any other matter arising under ORS 308.505 to 308.681."

(Emphases added.)

Taxpayer acknowledges that ORS 308.584, like the parole statute at issue in *Tuckenberry*, expressly requires exhaustion *of the process* before the agency as a prerequisite to a judicial appeal. However, taxpayer focuses on subsection (4), arguing that that provision, in contrast to ORS 144.335(1)(b), contains complete instructions describing

what a centrally assessed taxpayer must do, namely "file a timely request for a conference" and participate in it.[6] The court agrees with taxpayer that this instruction provides no textual basis to conclude that ORS 308.584 bars a taxpayer from asserting in this court specific issues that the taxpayer did not raise before the director.

Turning to the context of ORS 308.584, taxpayer traces the historical development of ORS 308.584, which shows that the legislature expressly imposed, then eliminated, and has never reinstated, an express issue exhaustion requirement for director conferences. Before 1995, *former* ORS 308.595(3) (1993) allowed a taxpayer subject to central assessment to "appeal" from a notice of the department's proposed assessment. The statute provided: "The provisions of ORS chapter 305 shall apply to appeals to the director and to the Oregon Tax Court." *Former* ORS 308.595(5) (1993). At that time, before the legislature had created the Magistrate Division, chapter 305 contained the statutes governing the department's administrative hearing process for the initial adjudication of all manner of disputes, including those involving the valuation of locally assessed property, as well as assessments of personal and corporate income taxes and virtually all other taxes that the department administered. *See former* ORS 305.275(5) (1993). An order of the department resulting from such an appeal was subject to review in this court. *Former* ORS 305.560(1) (1993). As to exhaustion of remedies, *former* ORS 305.275(4) (1993) provided (subject to exceptions not relevant here): "[N]o person shall appeal to the Oregon Tax Court *** unless the person first exhausts the administrative remedies provided before the department and the director." And most importantly, *former* ORS 305.425(3) (1993) provided (again, subject to exceptions not relevant here):

> "In the case of [Tax Court] proceedings to set aside an order or determination of the department, *the issues of fact and law shall be restricted to those raised by the parties in the appeal to the department.* If the court finds that other issues are important to a full determination of the controversy, it

---

[6] The department asserts, and taxpayer does not disagree, that the first sentence of subsection (4) adds a requirement that a taxpayer participate in the conference, not just request it.

shall remand the whole matter to the department for further determination and the issuance of a new order * * *."[7]

(Emphasis added.)

The 1995 legislature deleted virtually all of the foregoing portions of ORS chapter 305 in enacting the law that created the Magistrate Division. *See* Or Laws, 1995, ch 650, § 7 (striking exhaustion of remedies provision in *former* ORS 305.275(4)); *id.* § 19 (striking restriction of issues of fact and law provision in *former* ORS 305.425(3)). The same law also changed the references to an "appeal" of a notice of central assessment in *former* ORS 308.595 (1993), replacing them with references to a "request for a conference" with the director. *Id.* § 91. In the same section, the law struck from ORS 308.595 the statement that the provisions of ORS chapter 305 apply to "appeals to the director." *Id.* The 1995 changes thus eliminated not only the issue exhaustion requirement, but also any statutory requirement of exhaustion of administrative remedies, in central assessment cases as in other proceedings. *See Hyundai Semiconductor America v. City of Eugene*, 332 Or 293, 300 n 8, 27 P3d 124 (2001) ("The 1995 Legislature amended ORS 305.275 and eliminated the exhaustion requirement.").

In 2007, the legislature enacted a law specific to the department's central assessment procedures. Or Laws 2007, ch 616. Among other changes, the law removed the provisions for requesting a conference from ORS 308.595 and created what is now ORS 305.584, reprinted above. *Id.* § 3. Taxpayer points out that, while the 2007 law reinstated a specific requirement to exhaust the administrative remedy of a conference, the law does not reinstate an express issue exhaustion requirement. The court agrees with taxpayer that the prior existence of the express requirement of issue

---

[7] The department cites tax cases in support of its issue exhaustion argument, but those cases arose before the 1995 repeal of the foregoing provisions. *See, e.g.*, *Mullenaux v. Dept. of Rev.*, 293 Or 536, 540, 651 P2d 724 (1982). *See* Or Laws 1977, ch 873, § 29 (amending ORS 305.425 containing issue exhaustion requirement); *id.* § 35 (modifying director review statute by adding cross-reference to appeal processes in ORS chapter 305). The cases do not cite the former statutory issue exhaustion requirement, but the court finds their usefulness limited here, because they also do not clearly distinguish between a general exhaustion of remedies requirement and a specific requirement of issue exhaustion as discussed in *Tuckenberry*.

exhaustion, and its repeal in 1995, provide important context that tends to indicate that the legislature did not intend in 2007 to require issue exhaustion when it reinstated only a general requirement to exhaust administrative remedies.

Both parties refer to the legislative history of the 2007 act.[8] That act originated with a bill introduced at the request of the department, HB 2239. The department's representative described the purposes of the bill as updating archaic terminology, conforming descriptions of the steps in the annual central assessment process to current practices, importing "some due process parts" from other assessment laws into central assessment, and changing the process for correcting prior-year rolls.

Taxpayer points out that the chair of the Senate Finance and Revenue Committee and at least one other member referred to the 2007 bill as a "housekeeping" measure and voted it to the floor with little discussion. The department points to the lengthier discussion before the House Revenue Committee on February 6, 2007, where the same representative explained the department's intentions for the exhaustion of remedies provision. The department asserts that the language emphasized below shows a legislative intention to impose an issue exhaustion requirement. Taxpayer disputes this interpretation:

> "John Phillips:   Mr. Chair, one last comment and this is the one that I'm going to flag for you as being an immediate perception of a change here. And I'd be happy to talk at length here. It's the one place in the bill that there may be a perception of a change. We don't think so, our legal advice is that this is not a change, but you know in fairness to everybody, that you're aware and this is the part that deals with the appeal process. And I believe it's earlier in the bill, and it is on page 2, Section 3. And in Section 3 particularly looking at subsection (3), (4), (5) and (6), which are essentially between lines 12 and 25. And in this section it talks, it spells out in greater detail the process for disagreeing

---

[8] The parties also discuss the legislative history of the 1995 act, but the court finds little there of assistance, as most of the discussion centered on problems in the department's general appeal process for matters other than centrally assessed property. The legislature addressed those issues by creating the Magistrate Division.

and resolving value and property. Historically the director has held conferences, people file protective requests for conferences or they show up. *We discuss, we negotiate, resolve issues and most of them are not appealed.* Very—four percent of the cases there's an appeal and so we're clarifying that the request for conference is required, *you have to participate in a conference and work through these issues or you've not completed or exhausted your administrative remedies.* What we don't want to see and what we haven't seen because this is the way we've administered the law is people jumping over that process and saying we're not going to talk to the director, we're going to go to the—on appeal to the Tax Court. We don't see that, it hasn't been done to my knowledge and people understand that they need to have the conversation, that's why they file the protective appeal or where they have the conversation. So this spells it out in language that we think is crystal clear. Secondly—

"Chair Barnhart:   Are there any cases on points? Has the Tax Court sent something back because that conversation didn't take place?

"John Phillips:   I'm not aware of any. I would have to ask people that have been working in this longer.

"Chair Barnhart:   Okay, thank you. Second place.

"John Phillips:   Subsection (5) which is on line 21, that's the part that refers to subject to subsection (4) no appeal to the Tax Court may be made under 305.280. In other words this is the part that says, you know, you can't appeal to the Tax Court unless you've had your—it's almost a restatement of saying you needed to exhaust your administrative remedies. And Section 6, goes without saying but it's been without saying and we're offering that we actually spell it out in the statute and say there's no appeal to the Board of Property Tax Appeals. To refresh your memory on your orientation that Mary gave you, the Board of Property Tax Appeals is a local board, there's one at least in every county. They meet February to April or May, they hear appeals. It's sort of the first appeal for non-centrally assessed companies. It's the discussion part for them. Centrally assessed companies don't get an appeal to the Board of Property Tax Appeals for a number of reasons. One, they get a conference with the director. Two, which county would they appeal to? Would they go to the board in every county? You know, I've got twenty-five miles of wire or pipe in your county and I've

got a substation in your county, and so practically speaking it doesn't make a lot of sense to have a local board review a network system and so this is the way we've operated. To my knowledge we've had one appeal that was dropped over the years. None that have ever[] gone to the tax—the actual Board of Property Tax Appeals and—uh—that were actually heard. And so we're just putting it in statute so everybody's clear on what the policy is. So I'm drawing your attention to that because that explicitly has not been in the statute.

"Representative Butler:   Mr. Chair, just a question about the administrative—this is an administrative remedy, does the administrator ever waive having the meeting so that the folks can go directly to the Oregon Tax Court?

"John Phillips:   Mr. Chair, Representative Butler, I'm not aware of that. I would have to actually inquire with the director and find out.

"Chair Barnhart:   Thank you."

The court finds that the department's testimony does not show an intention to preclude litigation of issues not discussed in a director conference.[9] The department's concern appears to have been focused on preventing taxpayers from bypassing the conference process altogether, as the following excerpt from Phillips's testimony indicates:

"What we don't want to see and what we haven't seen because this is the way we've administered the law is people jumping over that process and saying we're not going to talk to the director, we're going to go to the—on appeal to the Tax Court. We don't see that, it hasn't been done to my knowledge and people understand that they need to have the conversation * * *."

At most, the department, like the board in *Tuckenberry*, may have wanted taxpayers to discuss every possible issue in the conference, as that is normally a desirable outcome when feasible. However, even if the court treats the statements of the department's representative as if they were uttered by legislators, the court sees no intention to bar either taxpayers or the department from raising in this court issues

---

[9] The court also does not necessarily attribute to the committee members the stated intentions of the department's representative. *See* Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 702 (2019).

not discussed in the director conference.[10] Accordingly, the court concludes that the legislature has not imposed a *statutory* requirement of issue exhaustion.

C. *Does the judicial doctrine of issue exhaustion require dismissal in this case?*

The court now turns to the principles that the Supreme Court considered in *Tuckenberry*: issue exhaustion as a tool to force development of the evidentiary record and to foster procedural fairness. As taxpayer points out, Oregon law does not require the director to develop or maintain any record of the conference proceedings, other than the resulting order, and neither the statute nor any administrative rule specifies any level of detail for the order. *See* ORS 308.584(3). And in contrast to the provisions governing trial court review of administrative procedures or those governing appellate court review of trial court procedures, this court's review of a director order under ORS 308.584 consists of trial *de novo. Compare* ORS 183.482(7) ("Review of a contested case shall be confined to the record, and the court shall not substitute its judgment for that of the agency as to any issue of fact or agency discretion.") *with* ORS 305.425 ("(1) All proceedings before the judge of the tax court shall be original, independent proceedings and shall be tried without a jury and *de novo.* (2) If a statute provides for an appeal to or a review by the court of an order, act, omission or determination of the Department of Revenue * * * the proceeding shall be an original proceeding in the nature of a suit in equity to set aside such order or determination or correct the act or omission."). Parties, including the department, often rely on that fact to present new evidence or to take new positions in this court that were not raised in the director conference. *E.g., Level 3 Communications, LLC III v. Dept. of Rev.*, 23 OTR 440 (2019). The court therefore concludes that the principle of developing the record before the director does not weigh in favor of barring judicial review. Turning to the second principle discussed in *Tuckenberry*, the court believes that requiring a party to raise an issue

---

[10] In fact, the testimony suggests that, with only four percent of cases being appealed, the director conference process was functioning smoothly even before the legislative change, when no statute imposed an exhaustion *of remedies* requirement, much less a requirement of *issue* exhaustion.

early on in the proceedings generally promotes procedural fairness. Specifically, issue exhaustion can prevent one party from prejudicing later proceedings against another by lying in wait with new facts or legal arguments until it is too late for the other party to defend itself on appeal. Again, however, where the next step is trial *de novo*, this principle loses force and does not weigh in favor of barring judicial review.[11]

The court now turns to prudential factors weighing for or against applying issue exhaustion. Taxpayer raises arguments involving the three factors that the court considered in *Tuckenberry*. The parties disagree whether, by asserting in its petition that the tentative RMV was excessive, taxpayer adequately raised the issue of the department's alleged prior inclusion of property in the centrally assessed unit. While the court believes it is theoretically possible that a narrow description of double-counting of telephone property as contributing to an erroneous value could have allowed the department to investigate and resolve the point during the limited period allowed for a conference and decision, the court is struck by the fact that taxpayer *did* raise the issue with precision in its petition for at least the most recent tax year following the Subject Years, only to have the department reject the argument without explanation. The department's action for that tax year suggests that an earlier, more specific allegation in taxpayer's petition would have been futile, another factor that the court considered in *Tuckenberry*. With regard to the remaining factor discussed in *Tuckenberry* (existence of an issue important to the public interest), the court observes that the department appears to take a legal position that no error occurred, or that any error would have no consequence as to future tax years, even if the department for the tax year 2009-10 did count as "new property" telephone property that it also included in the centrally assessed unit for the previous year. The court considers this issue important to resolve, not merely because the computation of maximum assessed value for tax year 2009-10 may affect taxpayer's maximum assessed value

---

[11] In light of these conclusions, the court does not address taxpayer's argument that the conference process is properly classified as "non-adversarial" based on the analysis in *Tuckenberry*.

for all later tax years, but also as a follow-on issue under *DISH Network* that may affect other centrally assessed taxpayers.

Finally, the court also finds persuasive taxpayer's argument that the short and inflexible deadlines prescribed in statute weigh against imposing a judicial requirement of issue exhaustion for director conferences. Centrally assessed businesses include some of the largest property taxpayers in the state: electric and gas companies, airlines, railroads, and the expanded realm of communication companies. *See* ORS 308.515(1). In some of these industries, technologies and market participants are changing rapidly, complicating the factual problem of determining the value of their Oregon property. Oregon's hundred-year-old system of central assessment laws contains profound complexities peculiar to this state, including the taxation of intangible property. The department and taxpayers must try to apply these laws to a dramatically changed set of circumstances and integrate them with more recent overlays of all-pervading constitutional limitation schemes. As recent cases have demonstrated,[12] in such a system it is all but inevitable that new, fundamental issues with high-stakes consequences will arise.[13] The annual window to address them

---

[12] *See, e.g.*, *Comcast*, 356 Or 282 (resolving when cable companies engage in "communication"); *DISH Network*, 364 Or 254 (resolving definition of "new property" for companies new to central assessment); *Northwest Natural Gas Co. v. Dept. of Rev.*, 347 Or 536, 226 P3d 28 (2010) (application of exemptions to centrally assessed property); *Level 3 Communications*, 23 OTR 440 (addressing definition of "property" of centrally assessed company); *T-Mobile, USA, Inc. v. Dept. of Rev.*, 24 OTR 22 (2020) (outlining statutory steps to determine which property is excluded from the unit).

[13] The department makes a policy argument in favor of issue exhaustion that counties in which a centrally assessed taxpayer's property is situated may bear the cost of a high interest rate (*see* ORS 311.812(3)(a)) on any refund determined after the director has finalized the annual tax roll, without the ability to mitigate that cost by availing themselves of existing statutory relief measures. The court declines to treat this argument as a prudential consideration. The legislature in 2005 made clear its concern about the costs to local government of lengthy appeal processes in industrial property and central assessment cases. *See* Or Laws 2005, ch 345, § 13 (enacting ORS 305.487). However, just two years later the legislature adopted ORS 308.584 without reinstating an issue exhaustion requirement for the director conference. *See* Or Laws 2007, ch 616. Four years after that, the legislature began adopting interest relief provisions (to which the department refers without citation), beginning with the "deferred billing credit" mechanism allowing counties to reduce the rate of interest on large potential refunds. *See* Or Laws 2011, ch 112, § 1 (adopting ORS 305.286). Then in 2017, the

through a director conference is short. Communication companies and other large centrally assessed businesses file an annual statement containing facts about their business property by March 15. ORS 308.520(1). The department mails its notice of tentative assessment to the taxpayer no later than May 25. ORS 308.582(1). A taxpayer generally has about three weeks to request a conference to discuss any disagreements. ORS 308.584(2) (no later than June 15). The director then has approximately seven weeks, until August 1, to hold a conference and issue the opinion and order. ORS 308.584(3). Even taking into account the possibility of informal dialogue between the department and a company, which the department describes in this case, the court finds it inappropriate to bar litigation over an emergent issue that the parties fail to discuss, or to fully discuss, during this short time.[14]

From this case and others,[15] the court is aware that both parties typically find value in the director conference process and that they often succeed in resolving significant issues there. The court encourages parties to continue to use the conference process to the greatest extent possible. However, the court finds no legislative intent, or prudential consideration, that would preclude litigation of issues not raised or not fully addressed in that process. Now, therefore,

IT IS ORDERED that Defendant's motions for partial dismissal are denied.

---

legislature converted that mechanism to the present "potential refund credit." Or Laws 2017, ch 541 (amending ORS 305.286). The court concludes that it must leave to the legislature the difficult task of continuing to address legitimate local fiscal concerns, including the availability of relief from statutory interest on property tax refunds.

[14] The court's conclusion makes it unnecessary to reach taxpayer's arguments that the court should relax any judicially imposed requirement of issue exhaustion, or that a finding of failure to comply with an issue exhaustion requirement should cause the court to remand the issue rather than bar it. Nor does the court reach taxpayer's argument early in these proceedings that the department is barred from asserting lack of exhaustion by its statement in its opinions and orders for tax years 2011-12 onward that taxpayer "has exhausted administrative remedies with the Director."

[15] As the department points out, dialogue between the parties in 2009 led the department to reduce the original tentative assessment in this case by 35 percent.