Argued and submitted March 4, at Lewis & Clark Law School, Portland, Oregon; decision of Court of Appeals reversed, order of Board of Parole and Post-Prison Supervision reversed, and case remanded to Board of Parole and Post-Prison Supervision for further proceedings October 24, 2019

# BRIAN LEE TUCKENBERRY,
*Petitioner on Review,*

*v.*

# BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent on Review.*

## (CA A163798) (SC S066213)

451 P3d 227

When petitioner was released from prison to post-prison supervision, the Board of Parole and Post-Prison Supervision issued an order of supervision that included a special condition that prohibited petitioner from entering into or participating in any intimate relationship or encounters with any person without prior written permission from his supervising officer. Petitioner, who was not represented by counsel, requested review of the board's order in terms that were unclear. After the board, and then the Court of Appeals, affirmed the order, petitioner sought review by the Oregon Supreme Court, arguing that the special condition requiring his supervisor's permission to enter into any "intimate" relationship was unconstitutionally vague and overbroad and that the board lacked authority under the relevant statute, ORS 144.102(4)(a), to impose it. The board responded to those arguments on their merits, but it also argued that the court lacked authority to consider the issues because petitioner had failed to exhaust his administrative remedies, as required by ORS 144.335(1)(b). Specifically, the board argued that petitioner failed to raise the same objections that he was raising before the court in his administrative review request to the board. *Held*: The administrative exhaustion requirement in ORS 144.335(1) incorporates flexible, prudential exhaustion principles, and under those prudential principles, the court would consider petitioner's claims, not specifically raised before the board; on the merits, petitioner's claim that the board lacked statutory authority to impose the special condition regulating petitioner's "intimate" relationships and encounters was completely resolved in petitioner's favor by the court's holding in a companion case, *Penn v. Board of Parole*, 365 Or 640, 451 P3d 589 (2019).

The decision of the Court of Appeals and the order of the Board of Parole and Post-Prison Supervision are reverse, and the case is remanded to the Board of Parole and Post-Prison Supervision for further proceedings.

En Banc

On review from the Court of Appeals.*

_____

* Judicial review from a final order of the Board of Parole and Post-Prison Supervision. 291 Or App 843, 419 P3d 818 (2018).

Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for petitioner on review. Stephanie J. Hortsch and Marc D. Brown, Deputy Public Defenders, filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Christopher Page, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

NAKAMOTO, J.

The decision of the Court of Appeals is reversed. The order of the Board of Parole and Post-Prison Supervision is reversed, and the case is remanded to the Board of Parole and Post-Prison Supervision for further proceedings.

**NAKAMOTO, J.**

This is a companion case to *Penn v. Board of Parole*, 365 Or 607, 451 P3d 589 (2019), also decided today. Like the petitioner in *Penn*, petitioner seeks relief from a special condition of supervision, imposed on him by an order of the Board of Parole and Post-Prison Supervision, that requires petitioner to obtain permission from his parole officer before entering into any "intimate" relationship or encounter. But, unlike the petitioner in *Penn*, petitioner was unrepresented by counsel and did not raise the issues and arguments in his administrative review request to the board that he now raises before this court. The board contends that, as a result, petitioner failed to exhaust administrative review as required by ORS 144.335(1)(b) and that his appeal, therefore, cannot be considered on its merits. We conclude, however, that (1) petitioner objected to the special condition and complied with the statutory exhaustion requirement, and (2) the proceedings before the board were not of the sort that, under the general prudential exhaustion principles that ORS 144.335(1)(b) incorporates, would require petitioner to have raised the specific legal arguments that he now asserts, on pain of being barred from judicial review of the board's order. We can and do consider petitioner's objections to the condition of post-prison supervision regulating his "intimate" relationships and encounters, and conclude, for reasons set out in *Penn*, that the condition was not lawfully imposed in accordance with the statute governing the board's authority.

Based on an incident in which he entered his ex-girlfriend's residence through a window and raped her, petitioner was convicted of first-degree sexual abuse, ORS 163.427, and first-degree burglary, ORS 164.225. He was sentenced to 75 months in prison and 45 months of post-prison supervision. Before the incident leading to those convictions, petitioner and the victim had had a two-year relationship marked by other instances of physical and sexual abuse.

Shortly before his prison term ended, the board issued an order listing the conditions that would apply to petitioner during his term of post-prison supervision. One of

several special conditions included in the order, which was identified as Special Condition 10, stated:

> "Other: Special conditions may be imposed that are not listed above when the Board of Parole and Post-Prison Supervision determines that such conditions are necessary. Submit to assessment and evaluation to develop a case plan for supervision and/or treatment. *** SEX OFFENDER PACKAGE A: (a) *** (n) ***** *Do not enter into or participate in any intimate relationship or intimate encounters with any person (male or female) without the prior written permission of the P[arole] O[fficer].*"

(Emphasis added.)

Petitioner filed a request for administrative review of the order on a form set out in the board's rules. The form provided a checklist of possible bases for objecting to an action of the board, with room for further explanation. The choices on the form included that (1) a finding by the board was not supported by substantial evidence; (2) pertinent information had not been available or had not been considered by the board; (3) the board's action was inconsistent with a rule or policy; and (4) the board's action violated a statute or constitutional provision.

On his form, petitioner indicated that there was no substantial evidence to support "a finding of[ ] Sex Offender Package A" and added, by way of explanation: "No children involved, no previous convictions, no drugs/alcohol use, frequent check in with *** my p[arole] o[fficer]." Petitioner also indicated that the board had failed to consider pertinent information, and he specified that he had a learning disability and limited education and that he did not know what he was signing when he signed his plea deal.

Petitioner filed the form as an attachment to an email, the text of which the board treated as an additional part of petitioner's administrative review request. In that email, petitioner stated:

> "I would like for my restrictions to be removed due to the fact that I'm trying to do everything possible to succeed in society. These restrictions on me are going to stop me from being successful in life. *** I would like to be in my daughter's life. I miss her dearly. She is in Mississippi. I've

changed these past 6 years since I've been incarcerated. If the parole board was ever to lift restrictions you would never have to doubt me. I want to do good. I want to be a better father. I would like a fair chance to make it in life."

The board denied petitioner's request for relief. After noting that petitioner had asked the board to remove "the special conditions of supervision listed under Special Condition (SC) # 10[,] commonly known as sex offender package A," the board responded that the board was *required* to impose that package of conditions on persons convicted of sex crimes, including those convicted of the crime of first-degree sexual abuse. The board then noted that some of the conditions "listed in sex offender package A" were not to be read as absolute prohibitions, but instead required prior written permission from petitioner's supervising officer. The board stated that it had determined that petitioner's remaining allegations were "not supported by the factual record," were "not sufficiently developed or explained," or were "without merit in light of the record and the board's findings of fact and conclusions of law." The board ended by advising petitioner, "You have exhausted your administrative remedies" and "may petition the Court of Appeals for judicial review of this order."

Petitioner filed a timely petition for judicial review by the Court of Appeals. In his opening brief, petitioner assigned error to the board's imposition of "the last provision in Special Condition No. 10," *i.e.*, the prohibition on "entering into or participating in any intimate relationship or intimate encounters with any person without the prior written permission of his supervising officer." Petitioner asserted that that condition (1) was not one that the board was required to impose on any person convicted of a sex crime and that the board had acted outside the range of discretion delegated to it by ORS 144.102 in imposing it; (2) was not supported by substantial evidence; and (3) was unconstitutionally vague and overbroad.

The board initially responded by moving to dismiss the petition for judicial review "for lack of jurisdiction" on the ground that petitioner had failed to exhaust his administrative remedies as required by ORS 144.335(1)(b) (a person

"may seek judicial review of a final order of the board" if the person " has exhausted administrative review as provided by board rule"). In that motion, the board took the position that no part of petitioner's administrative review request, including the email to which it had been attached, identified the particular condition that was the focus of petitioner's petition for judicial review. Neither, in the board's view, did the administrative review request raise the specific objections that petitioner was raising on judicial review. The Appellate Commissioner denied the motion, explaining that, "giving petitioner the benefit of the doubt," petitioner's administrative review request had sufficiently raised the issues that he appeared to be raising in his petition for judicial review.

Later, in its response brief, the board repeated and expanded on its request that the petition for judicial review be dismissed for failure to exhaust administrative remedies, but it also responded to petitioner's arguments on the merits. The Court of Appeals implicitly rejected the board's exhaustion argument, but accepted its merits arguments, when it affirmed the board's order without opinion. *Tuckenberry v. Board of Parole*, 291 Or App 843, 419 P3d 818 (2018).

Petitioner now seeks review of that decision by this court. He argues that the special condition, which purports to regulate his intimate relationships and encounters, (1) falls outside of the range of discretion delegated to the board with respect to conditions of post-prison supervision and (2) is unconstitutionally vague and overbroad.

The board responds to those arguments, but it also suggests that the appellate courts were and are without authority to consider the issues that petitioner raises, because petitioner failed to exhaust his administrative remedies as required by ORS 144.335(1)(b). Although the board acknowledges that petitioner followed the *procedures* required to exhaust his administrative remedies by timely filing an administrative review request objecting to his supervisory conditions, it argues that petitioner nevertheless failed to exhaust administrative review because he did not raise the same objections in his administrative review request that he now is raising before this court. The board

highlights that petitioner indicated on the form that he was challenging Sex Offender Package A as unsupported by substantial evidence, a claim not pursued on judicial review, but did not check the boxes relevant to, or otherwise identify, the legal bases on which he now relies to challenge the condition: that its imposition falls outside of the scope of the board's statutory discretion and violates a statute or constitutional provision.

We begin our analysis with the exhaustion issue. The general doctrine of exhaustion of administrative remedies is judicially created, a creature of the common law, and is employed by the courts—including this one—in the interest of orderly procedure and good administration. *Miller v. City of Portland*, 356 Or 402, 419-20, 338 P3d 685 (2014); *Marbet v. Portland Gen. Elect.*, 277 Or 447, 456, 561 P2d 154 (1977). It generally holds that "judicial review is only available after the procedure for relief within the administrative body itself has been followed without success." *Mullenaux v. Dept. of Revenue*, 293 Or 536, 539, 651 P2d 724 (1982) (quoting *Miller v. Schrunk*, 232 Or 383, 388, 375 P2d 823 (1962)). That prudential doctrine of exhaustion is "not rigid but flexible," and can be relaxed, or even dispensed with altogether, depending on the circumstances. *See Marbet*, 277 Or at 456 (doctrine "not rigid but flexible"); *accord Miller*, 356 Or at 420-21 (declining to apply exhaustion doctrine when doing so would discourage orderly procedure and good administration); *see also* Kristen E. Hickman & Richard J. Pierce, Jr., 2 *Administrative Law Treatise* § 17.2, 1457 (6th ed 2019) (in general, common-law exhaustion requirement does not apply if "considerations of individual justice, efficiency, or wise judicial administration support the need for judicial review in the absence of exhaustion").

The exhaustion doctrine in its common-law, prudential form, includes a flexible "issue exhaustion" requirement. As this court has recognized on more than one occasion, "the requirement that a party must have objected before the agency to errors he asserts on judicial review is one facet of the general doctrine that a party must exhaust his administrative remedies." *Marbet*, 277 Or at 456; *see also Mullenaux*, 293 Or at 541 ("A party does not exhaust his administrative remedies simply by stepping through the motions of

the administrative process without affording the agency an opportunity to rule on the substance of the dispute.").

Notably, however, the "issue exhaustion" requirement, like the broader common-law exhaustion doctrine, is a prudential doctrine that courts may relax or set aside entirely, depending on the circumstances. *See generally* John C. Dubin, *Torquemada Meets Kafka: The Misapplication of the Issue Exhaustion Doctrine to Inquisitorial Administrative Proceedings*, 97 Colum L Rev 1289, 1309 (1997) (describing "issue exhaustion" in administrative proceedings as a "flexible, discretionary doctrine" that derives from prudential preservation principles and that is similarly subject to "prudential and equitable exceptions"). In *Marbet*, this court recognized that the requirement that judicial review be limited to objections raised before the administrative agency is a judicial policy that promotes "orderly procedures and good administration" but that the policy has exceptions. 277 Or at 456. For example, the requirement is not applicable when objections are to legal flaws that the agency could not remedy, and "[t]here can be other justifications for considering on judicial review important statutory issues not first decided by the agency," including when "correct administration of the statute concerns public interests beyond those of the parties." *Id.*

In arguing for dismissal of petitioner's present claims for failure to exhaust his administrative remedies, the board does not rely on the prudential exhaustion doctrine. Rather, it contends that ORS 144.335(1)(b) imposes not just a procedural-exhaustion requirement, but also a strict issue-exhaustion requirement that is divorced from "the generally applicable exhaustion requirements that otherwise apply to judicial review of agency's actions." If the board is correct, then this court is bound by that statutory requirement and must decline to decide the merits of any objection that petitioner failed to raise in the administrative review proceeding before the board, without regard to the common law prudential doctrine. But petitioner counters that the board is mistaken.

Petitioner argues that ORS 144.335(1)(b), by its terms, contains no such issue-exhaustion requirement. Rather,

petitioner argues, the question of whether he adequately exhausted his administrative remedies must be decided under a flexible, prudential exhaustion doctrine. And under that flexible doctrine, he contends, issue exhaustion would not be a prerequisite for judicial review of the board order that is before us. In any event, he adds, he sufficiently alerted the board to his contention that the special condition was improper because its broad scope would hinder his relationship with his child.

We first consider to what extent ORS 144.335(1)(b) imposes an issue-exhaustion requirement. That, ultimately, is an issue of legislative intent, which we resolve by applying our usual analytical framework, focusing on the statutory text, the surrounding context, and any helpful legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Contrary to the board's position, we conclude that the legislature likely intended to adopt the general, prudential doctrine pertaining to exhaustion of administrative remedies.

In relevant part, ORS 144.335 provides:

"(1)   A person over whom the State Board of Parole and Post-Prison Supervision exercises its jurisdiction may seek judicial review of a final order of the board as provided in this section if:

"(a)   The person is adversely affected or aggrieved by a final order of the board; and

"(b)   The person has exhausted administrative review as provided by board rule."

Because ORS 144.335(1)(b) requires exhaustion of administrative review "as provided by board rule," we look to what those rules have to say about issue exhaustion.

The board's general exhaustion rule, OAR 255-080-0001(2), provides:

"An inmate/offender has exhausted his or her administrative remedies *after complying with OAR 255-080-0005 and 255-080-0008*, and after the Board denies review, or grants review and either denies or grants relief. The Board shall notify the inmate/offender that exhaustion

has occurred and the time for judicial appeal of appealable orders shall run from the mailing date of the notice."

(Emphasis added.) The general exhaustion rule thus includes a set of nested rules that are relevant to the issue at hand.

The first of the referenced rules, OAR 255-080-0005, simply provides that administrative review is obtained by sending a request for review to the board within a specified time period. The second referenced rule, OAR 255-080-0008, sets out specifications for a request for review. It provides, in relevant part:

"(1)   The request for administrative review shall be substantially in the form specified by the Board in Exhibit O, Administrative Review Request Form, and shall contain:

"* * * * *

"(c)   Identification of the Board action or order for which review is requested, by name of action * * * and date of action.

"(d)   A plain and concise statement of the points for which the offender wants review, specifically identifying how the challenged Board action is alleged to be in violation of statutes or Board rules, or how it is alleged that the decision was not supported by evidence in the record, or in what other way the offender believes the Board's action to be in error. A request for administrative review must concisely explain how the case fits the criteria for review listed in OAR 255-080-0010.

"(e)   The request must state, where applicable, what statute, administrative rule, or constitutional provision is alleged to have been violated, including the effective date of the law or rule."

The rule cited in subsection (d), OAR 255-080-0010, provides a list of the general criteria for granting review:

"(1)   The Board action is not supported by evidence in the record; or

"(2)   Pertinent information was available at the time of the hearing which, through no fault of the offender, was not considered; or

"(3)   Pertinent information was not available at the time of the hearing * * *; or

"(4) The action of the Board is inconsistent with its rules or policies and the inconsistency is not explained; or

"(5) The action of the Board is in violation of constitutional or statutory provisions or is a misinterpretation of those provisions; or

"(6) The action of the Board is outside its statutory grant of discretion."

Thus, under the "board rule[s]" to which ORS 144.335(1)(b) refers, an offender has exhausted administrative review only after he or she has filed a request for review that identifies the board action for which review is requested and the specific ways that action is thought to be in error. OAR 255-080-0001(2); OAR 255-080-0008(1)(d).

The text of ORS 144.335(1)(b), even considering the board rules, does not spell out in express terms whether a petitioner on judicial review is strictly prohibited from raising arguments about the board's errors that the petitioner did not raise on administrative review, as the board contends. Looking first to the rules referenced in the statute, they define exhaustion as requiring that the person seeking administrative review specifically identify the grounds upon which, *in that administrative review*, they wish to challenge the board's order or action. The rules contain nothing that suggests that *judicial* review cannot be obtained on grounds other than those identified in the request for administrative review. Neither do the words of ORS 144.335(1)(b) expressly state such a limitation. The statute merely provides that a person may seek judicial review of "a final order of the board" if he or she has exhausted review as provided by board rule.

This court has never decided whether or how ORS 144.335(1) incorporates an issue-exhaustion requirement for judicial review.[1] But in 1982, this court construed a different

---

[1] In *Jenkins v. Board of Parole*, 313 Or 234, 239, 833 P2d 1368 (1992), we explained that the provision in ORS 144.335(1) for an inmate to obtain judicial review "after exhaustion of administrative review as provided by board rule" means that the inmate "must use any *process* of administrative review" provided by board rule "before seeking judicial review." (Emphasis added.) *Jenkins*, however, was not a case concerning issue exhaustion and should not be understood to have determined the issue presented here. The issue in that case was whether

statute requiring a party to have exhausted administrative remedies as incorporating the general Oregon doctrine of exhaustion of administrative remedies. *See Mullenaux*, 293 Or at 540-01 (holding that ORS 305.275(4), which mandated that a party exhaust administrative remedies, "requires at least as much" as the "general rule of exhaustion of administrative remedies").

The exhaustion requirement in ORS 144.335(1) was first added by Oregon Laws 1989, chapter 790, section 41.[2] Neither of the parties have directed us to any legislative history pertinent to what the legislature intended by enacting the requirement that persons seeking judicial review of a final board order "exhaust[] administrative review as provided by board rule." Our own review reflects that the legislative history of the 1989 amendment was the subject of only brief discussion.

The Senate Judiciary Committee addressed the need for the amendment when a senator questioned whether it went without saying that a person would be entitled to judicial review after exhausting administrative remedies. Tape Recording, Senate Committee on Judiciary, SB 1073, June 6, 1989, Tape 1, Side A (statement of Sen Ronald Grensky). Vern Faatz, then the chair of the board, explained that, without the amendment, an inmate could appeal a decision by the board by going directly to the Court of Appeals and that the amendment would require the inmate "to come through us first." *Id.* (statement of Vern Faatz). Faatz added that the amendment was expected to reduce the cost of attorney fees

---

the phrase "as provided by board rule" referred to rules in effect when the statutory amendment took effect in 1989 or to new rules, which the board later promulgated and which took effect in 1991. *Jenkins*, 313 Or at 238. Thus, the focus of the case was on the board's procedures in place at the time of the statutory amendment.

[2] Section 41 in part amended ORS 144.335(1) to read:

"144.335. (1) When a person over whom the board exercises its jurisdiction is adversely affected or aggrieved by a final order of the board related to the granting, revoking or discharging of parole **or the revoking of post-prison supervision and after exhaustion of administrative review as provided by board rule,** such person is entitled to judicial review of the final order."

The current version of ORS 144.335(1) was enacted in 2001. Or Laws 2001, ch 661, § 1.

that the board had to spend on court appeals. *Id.*[3] With such limited legislative history, it is difficult to draw any conclusions about the legislature's intention, other than that the legislature did not object to the board's interest in requiring inmates to appeal decisions to the board before going to the Court of Appeals.

Considering the limited nature of both the legislative history and the context of the amendment, we focus on the fact that the term "exhaustion" in connection with administrative agency review is a legal term of art. In a fashion similar to this court's conclusion in *Mullenaux*, we conclude that the requirement in ORS 144.335(1)(b) that the person seeking judicial review must have "exhausted administrative review as provided by board rule" incorporates the general exhaustion doctrine of administrative law in Oregon. Indeed, that is how the Court of Appeals has understood ORS 144.335(1). In *Ayers v. Board of Parole*, 194 Or App 429, 435-36, 97 P3d 1 (2004), the Court of Appeals held that the legislature had codified in ORS 144.335(1)(b) a general, flexible rule of administrative law that judicial review is available only after available procedures for relief within the agency have been followed and the party has raised before the agency the challenges that it intends to make on judicial review. Thus, the statute's issue-exhaustion requirement is not uniquely and strictly fashioned for the board, but instead remains flexible under general prudential exhaustion principles.[4]

We next consider whether review of the legal issues that petitioner now raises that were not expressly raised before the board should be precluded under the general and

---

[3] House Bill 2250 was "gutted" and "stuffed" with the language of SB 1073, and so HB 2250 is the bill containing the amendment to ORS 144.335(1) that was passed by the legislature.

[4] Some federal courts have suggested that, when an agency's own rules require a party seeking administrative review to list the specific issues to be considered in that review, issue exhaustion is required to obtain *judicial* review of the agency's final decision, *see, e.g.*, *Sears, Roebuck and Co. v. FTC*, 676 F2d 385, 398 n 26 (9th Cir 1982). Be that as it may, the existence of an administrative agency's exhaustion rule requiring specification of all issues to be considered *in administrative review*, when referenced in a statute requiring administrative exhaustion for purposes of judicial review, does not impose a *statutorily required* limitation on the issues that may be raised on judicial review.

flexible prudential exhaustion principles that, as discussed, are incorporated into ORS 144.335(1)(b). In litigation in the courts, the rule limiting appeals to issues that were preserved in the trial court ensures the full development of the evidentiary record and fosters fairness by allowing the parties, who are expected in our adversarial court system to present facts and legal arguments favoring their respective positions on their own, to respond fully and deliberately to all contentions, without surprise. *See Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2009) (preservation requirement promotes judicial efficiency by allowing the trial court to correct its own errors, fosters full development of the record, and ensures that parties are not denied opportunities to meet an argument); *see also Sims v. Apfel*, 530 US 103, 109-12, 120 S Ct 2080, 147 L Ed 2d 80 (2000) (explaining that courts impose issue-exhaustion requirement for same basic reasons of fairness to the parties that courts impose a preservation requirement in ordinary appellate review and holding that Social Security claimants who exhausted administrative process need not also exhaust issues presented to the agency as a prerequisite to seeking judicial review, given that the administrative proceedings were not adversarial). Citing *Torquemada Meets Kafka*, Professor Dubin's law review article, and the reasoning of the United States Supreme Court in *Sims*, petitioner argues here that (1) the proceedings before the board that result in the imposition of conditions of post-prison supervision are not adversarial, court-like proceedings and (2) an issue-exhaustion requirement for judicial review is therefore inappropriate when conditions of post-prison supervision are challenged.

We agree that proceedings before the board regarding conditions of supervision are not traditional adversarial proceedings. Under the controlling statutes, an inmate to be released on supervision plays no role in identifying legal issues or presenting evidence that might affect the decision to impose or not impose a condition of supervision. The Department of Corrections proposes conditions of parole to the board, as part of a broader release plan for the inmate, and the board reviews and modifies the department's proposal, basing its decisions about conditions of supervision on evidence of its own choosing. ORS 144.098 (in deciding

whether to approve release plan, board "may" interview the inmate and review certain specified reports and records). Although the board's rules instruct the inmate to specifically identify the legal issues that he or she wishes to raise in any request for administrative review of a condition of supervision imposed by the board, OAR 255-080-008(1)(d), and appear to permit the inmate to submit evidence relating to those issues,[5] those limited instructions do not make the resulting administrative review proceeding a fully adversarial one—particularly when the inmate will rarely be represented by counsel when filing his or her request for administrative review. The board need not hold a hearing on a request, and petitioner notes that the board did not hold a hearing in his case. Thus, the administrative proceedings below were of the kind that, through an analogy to the preservation requirement in ordinary litigation, some courts, including the Supreme Court in *Sims*, have found to be insufficiently adversarial to warrant the application of an issue-exhaustion requirement.

However, given that the legislature intended to adopt the general doctrine of exhaustion of administrative remedies in ORS 144.335(1), we decline to make the jump from that fact to a blanket conclusion that all proceedings before the board involving the imposition of special conditions of post-prison supervision are exempt from the issue-exhaustion requirement that inheres in the general doctrine of exhaustion of administrative remedies under Oregon law. Instead, we consider whether issue exhaustion is appropriately required in this case as a prudential matter.

For three reasons, we are not persuaded by the board's argument that we must decline to reach the merits of petitioner's challenge to the special condition at issue because he failed to adequately exhaust his avenues for relief before the board. First, on administrative review, petitioner objected to "Sex Offender Package A," which, as set out in the board's Order of Supervision Conditions, appeared to include the "intimate relationship or intimate encounters" condition at issue. Petitioner provided at least a general

---

[5] The rules allow a person requesting administrative review to submit "additional documentation in support of the request." OAR 355-080-0008(3)(b).

description of his concerns to the board, and even included his specific concern that the condition would interfere with his relationship with his daughter. The board understood that petitioner challenged the condition's limitation on his relationships, and petitioner renews that challenge on judicial review. We note that petitioner was unrepresented while he challenged the condition during the administrative review, and his request for administrative review appears to be all that could be expected, given his evident educational disadvantages. Second, petitioner raises important issues of public interest concerning the board's statutory authority to impose a special condition that purports to regulate all of a parolee's "intimate" relationships and encounters. *See Marbet*, 277 Or at 456 (it may be appropriate to decide an important statutory issue on review even if not first decided by an administrative agency). And third, the board's position on an identical special condition in *Penn*, the companion to the present case, reflects that it likely would have been futile for petitioner to raise the exact statutory authority and constitutional arguments that he now asserts through counsel. In *Penn*, the board refused to adjust the condition even though the petitioner in *Penn* specifically raised those arguments during administrative review of his order. *Penn*, 365 Or at 610-11.

In sum, given the equities and as a prudential matter, we may and do consider petitioner's claims, not specifically raised before the board, that the supervisory condition at issue is one that the board lacked statutory authority to impose and, in any event, is unconstitutionally vague and overbroad. On the merits of petitioner's claims, in light of our decision today in *Penn*, our consideration of those issues need not be protracted.

The petitioner in *Penn* challenged the board's imposition of a special condition of supervision that is identical to the one at issue here, directing the petitioner "not [to] enter into or participate in any intimate relationship or intimate encounters with any person (male or female) without the prior written permission" of his supervising officer. *Penn*, 365 Or at 609. Like petitioner here, the petitioner in *Penn* argued that, in imposing that condition, the board exceeded its statutory authority under ORS 144.102(4)(a) to impose

any special condition that it "considers necessary because of the individual circumstances of the person [to be supervised.]" Based on the breadth of the condition's wording and the board's explanation that it considered imposition of the condition necessary when it was narrowly focused on the sexual relationships or encounters of the petitioner, this court held that the board had exceeded its authority under ORS 144.102(4)(a) by imposing the broad condition on the *Penn* petitioner. *Penn*, 365 Or at 637-38. Given that, in this case, the board has similarly failed to confront the actual breadth of the special condition in explaining the necessity of imposing it, that holding completely resolves the present case. Petitioner therefore is entitled to the relief he seeks— invalidation of the board's imposition of the "intimate" relationships and encounters condition—on the same ground. A decision on petitioner's other arguments for invalidating the condition is unnecessary.

The decision of the Court of Appeals is reversed. The order of the Board of Parole and Post-Prison Supervision is reversed, and the case is remanded to the Board of Parole and Post-Prison Supervision for further proceedings.