No. 575          November 8, 2023          13

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

SHONN WATSON,
*Petitioner,*

*v.*

BOARD OF PAROLE AND POST-PRISON
SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A174076

Submitted November 21, 2022.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stephanie J. Hortsch, Deputy Public Defender, Office of Public Defense Services, filed the brief for petitioner.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Christopher Page, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.

AOYAGI, P. J.

Reversed and remanded.

**AOYAGI, P. J.**

Petitioner seeks judicial review of a 2020 order of the Board of Parole and Post-Prison Supervision that, pursuant to ORS 163A.100 and OAR 255-085-0020(1) (Jan 10, 2020), set his sex offender notification level (SONL) at Level 3 (High). In his first three assignments of error, petitioner contends that the board violated its own rule, OAR 255-085-0020(1) (Jan 10, 2020), when it conducted a risk assessment that did not account for sex-offense-free time in the community, thus failing to use the Static-99R rules and research as required by the rule. We addressed identical assignments of error in another case decided today, *Sohappy v. Board of Parole*, 329 Or App 28, ___ P3d ___ (2023). Applying *Sohappy*, we agree with petitioner that the board violated its own rule, and we reverse on that basis. However, we reject petitioner's fourth and fifth assignments of error, in which he challenges how the board scored him on the "stranger victim" and "intimate partner" items on the Static-99R. Accordingly, we reverse and remand.

Unless otherwise specified, all references to OAR 255-085-0020 in this opinion are to the version that went into effect on January 10, 2020, which is the version that the board applied to petitioner. In *Sohappy*, we addressed the version of OAR 255-085-0020 that went into effect on April 29, 2020. 329 Or App at 30-31. There are differences between the January 10, 2020, and April 29, 2020, versions of the rule, but they are not material to the issue on review. The *current* version of the rule is materially different from the versions at issue in *Sohappy* and this case, *see id.* at 31, but those amendments are not at issue in this proceeding.

## I. FACTS

Petitioner has been registered as a sex offender since 1999, when he was convicted of attempted first-degree sexual penetration of an adult victim. He was released from custody on that offense in 2002. Since 2002, petitioner has been convicted of multiple nonperson offenses (such as forgery and drug crimes) but no sexual offenses.

In 2013, the legislature enacted what is now ORS 163A.100, creating three different sex offender notification

levels—Level 3 for offenders presenting the highest risk of committing another sex offense, Level 2 for offenders presenting a moderate risk of committing another sex offense, and Level 1 for offenders presenting the lowest risk of committing another sex offense. The goal was to stratify the registry based on sexual recidivism risk, as well as provide a mechanism to remove people from the registry, so as to make the registry more useful to law enforcement for preventing future sex offenses by making it possible to identify past offenders who present a high risk of committing another sex offense. *Sohappy*, 329 Or App at 37-39. The legislature tasked the board with classifying over 19,000 existing registrants, a process that is still ongoing, as well as all new registrants. *Id*. at 39-41.

In early 2020, the board conducted a risk assessment of petitioner for the purpose of determining his SONL. Under OAR 255-085-0020(1), the board was required to use "the Static-99R actuarial instrument * * * along with attending rules and research found on http://www.static99.org/" to conduct the risk assessment. The board initially calculated petitioner's score on the Static-99R as "7" points but, after considering written objections, changed his score to "6" points. Based solely on that score, the board set petitioner's SONL at Level 3. That is, it assessed him as presenting a high risk of committing another sex offense. The board issued a final order to that effect, notifying petitioner that the order was not subject to administrative review under OAR 255-080 but was subject to judicial review under ORS 144.335.

Petitioner filed a timely petition for judicial review. As previously described, petitioner contends that the board violated OAR 255-085-0020(1) when it conducted a risk assessment that did not account for sex-offense-free time in the community, and he also challenges how the board scored him on two particular Static-99R items. We begin with the latter.

## II.   PETITIONER'S STATIC-99R SCORE

The Static-99R actuarial instrument is discussed in some detail in *Sohappy*, 329 Or App at 41-45. As relevant here, to determine a person's Static-99R "score," the evaluator must score 10 individual factual items regarding

the person's personal and criminal history as of the date of the index offense or, for some items, the date of release for the index offense. *Id*. at 41-42 (listing the 10 items). Petitioner challenges how he was scored on two of the items: first, whether he had ever committed a sex offense against a stranger, and, second, whether he had ever lived with an intimate partner for two continuous years. Petitioner raised the same challenges to the scoring of those items in his written objections to the board's order, thus exhausting his administrative remedies.

The Static-99R Coding Rules govern the scoring of the Static-99R, including addressing how each of the 10 factual items is to be scored. *See* Amy Phenix, Yolanda Fernandez, Andrew J. R. Harris, Maaike Helmus, R. Karl Hanson, & David Thornton, *Static-99R Coding Rules Revised, 2016, available at* https://saarna.org/static-99/ (accessed Oct 9, 2023) (Coding Rules).[1] Because scoring an individual item requires both making a factual finding and applying the Coding Rules, a challenge to how a person was scored on an item may implicate more than one standard of review. We review factual findings for substantial evidence. ORS 144.335(3). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c). "[W]e review for legal error the board's inter-pretation of the Static-99R Coding Rules." *Stewart v. Board of Parole*, 312 Or App 32, 36, 492 P3d 1283 (2021).

Here, petitioner was scored one point for the "stranger victim" item, based on a finding that he was a "stranger" to the victim of his index sex offense (the 1999 offense). "A victim is considered a stranger if the victim did not know the offender (or vice versa) 24 hours before the offense." Coding Rules at 82. The Coding Rules address what it means to "know" a person. *See id*. The standard for knowing a person is "quite low but does involve some level of interaction." *Id*. Petitioner argues that the "stranger" finding is not supported by substantial evidence or that the

---

[1] The Coding Rules are also available as an exhibit to the board's current rules. OAR 255-085-0020 (Aug 16, 2022) (Exhibit STATIC-99R). We agree with the parties that the Coding Rules are "attending rules" under OAR 255-085-0020(1).

board misapplied the Coding Rules. Having reviewed the record, we agree with the board that there is enough evidence to support the finding that petitioner and the victim met for the first time on the day of the crime and, thus, were strangers. Further, given that finding, the board correctly applied the Coding Rules to score one point. We therefore reject the fourth assignment of error.

Petitioner was also scored one point for the "intimate partner" item, based on a finding that he had never as an adult cohabitated with someone in an intimate relationship for two years or longer.[2] *See* Coding Rules at 49-51 (detailing how to determine whether a person has had a qualifying relationship). Under the Coding Rules, a person should be scored one point if the evaluator finds that the person has never had a qualifying relationship, zero points if the evaluator finds that the person has had a qualifying relationship, or zero points if there is no credible evidence from which to make a finding. *Id.* at 49. The evaluator "should make an attempt to confirm the offender's relationship history through collateral sources and official records" but, absent such information, may rely on self-reported information that is deemed credible. *Id.*; *see also Baker v. Board of Parole*, 305 Or App 814, 822, 473 P3d 83 (2020) ("The rules' use of the words 'should attempt' and 'greatly preferred' indicate that the board enjoys at least some discretion over the decision to contact a collateral source.").

Petitioner gave conflicting self-reports to the board as to whether he had had a qualifying relationship. On the initial questionnaire, he denied it. Later, before the board issued its SONL order, petitioner sent the board a letter providing the name of a person with whom he had a four-year intimate relationship, but the board determined that the relationship did not meet the cohabitation requirement,

---

[2] The Coding Rules require the evaluator to consider only cohabitation that occurred before release for the index sex offense. Coding Rules at 49. However, for some registrants, the board considers cohabitation through the SONL assessment date. Oregon Board of Parole and Post-Prison Supervision, *SONL - Age Chart*, *available at* https://www.oregon.gov/boppps/Documents/R%26R/S99R_AgeChart2019.pdf (accessed Oct 9, 2023); *see also Sohappy*, 329 Or App 51-52 (discussing board practice). That variation is not at issue here, and the board otherwise follows the Coding Rules in scoring the "intimate partner" item, so we discuss only the Coding Rules.

which petitioner does not challenge. Yet later, after the board issued its initial SONL order, in his written objections, petitioner identified a new person, J, with whom he claimed to have cohabitated for four years (including two years as an adult). The board considered that assertion but, based on collateral sources, concluded that petitioner's initial self-report was more credible than his later self-report.

We agree with petitioner that the collateral sources on which the board relied were weak, in that they allowed only a weak inference that petitioner did not live with J for a full two years as an adult.[3] Standing alone, the existing collateral evidence would not support an affirmative finding that petitioner never had a qualifying relationship, such that the board would need to either consult additional collateral sources to make an affirmative finding or score a zero on this item based on the lack of credible information. *See* Coding Rules at 49 ("If no information is available this item should be scored a '0' (zero)—as if the offender has lived with an intimate partner for two years."). But the collateral sources on which the board relied do not stand alone here. Although certainly not definitive, they provided some basis for the board to credit petitioner's initial self-report denying a qualifying relationship over his last-minute assertion of a qualifying relationship with a person who he had never mentioned until after the board issued its initial order. We therefore reject the fifth assignment of error.

III.   PETITIONER'S SEX-OFFENSE-FREE TIME

We next consider petitioner's first three assignments of error, which, as previously described, are identical to the assignments of error in *Sohappy*, 329 Or App at 45-46. We limit our discussion to issues unique to this case. For a fuller understanding of the issues addressed herein,

---

[3] Petitioner had been scored "1" on this item on two prior Static-99 assessments, but only the scores are in the record, not the information on which they were based. *See* OAR 255-085-0020(1) ("Classifying agencies may score registrants using *information* from previous Static-99 or Static-99R assessments." (Emphasis added.)) Also, petitioner had made statements at different points in the past regarding his intimate-relationship status in September 1991 and regarding his longest intimate relationship being with someone who was not J. Suffice it to say that those statements are not necessarily inconsistent with petitioner having lived with J for two years as an adult, but they make his claim to have done so at least somewhat less credible.

we direct the reader to *Sohappy*, also decided today, which discusses the history of Oregon's sex-offender registry, the board's promulgation and interpretation of a substantively identical version of OAR 255-085-0020(1), the Static-99R risk assessment methodology, and arguments nearly identical to petitioner's.

### A.  *Procedural Issues*

This case comes to us in a different posture than *Sohappy*. The petitioner in *Sohappy* had raised the issue of sex-offense-free time to the board, thereby exhausting any administrative remedies available. *Sohappy*, 329 Or App at 33-35. By contrast, in this case, petitioner acknowledges that he did not raise the issue to the board. Relying on *Tuckenberry v. Board of Parole*, 365 Or 640, 642, 451 P3d 227 (2019), he asks us to relax or set aside the exhaustion requirement. The board urges us not to reach the merits, given the failure to exhaust administrative remedies.

As mentioned in *Sohappy*, 329 Or App at 33, it is "not at all clear" that the board actually provides registrants with an opportunity to raise to the board this type of challenge to an SONL order. OAR 255-085-0040(1) provides that written objections to an SONL order "are limited to presenting factual evidence regarding the Static-99R *score* and must be plain, concise, and directly related to *specific items on the Static-99R that the registrant claims were not scored correctly*."[4] (Emphasis added.) The "Notice of Rights" and the "Written Objections" form that petitioner received, which are identical to those in *Sohappy*, reiterate that limitation. *See Sohappy*, 329 Or App at 34 (describing documents). If the board did not provide an opportunity for petitioner to challenge the board's interpretation of OAR 255-085-0020(1) as relevant to the SONL order, then there was no administrative remedy to exhaust. *See Fifth Avenue Corp. v. Washington Co.*, 282 Or 591, 618, 581 P2d 50 (1978) ("It goes without saying that for an administrative remedy to be 'exhaustible' it must be available."); *Golden Rule Farms v. Water Resources Dept.*, 321 Or App 43, 48, 515 P3d 908

---

[4] The current version of OAR 255-085-0040(1) is materially the same as the version in effect when the board issued the order on review, so we cite the current rule for convenience.

(2022) (explaining that a person generally must present an issue to the agency before it will be considered on judicial review, if the agency "provides a process" to raise it).

However, we need not decide that issue, which the parties do not address, because, even assuming that an opportunity existed to raise the issue to the board and that it was forgone, we agree with petitioner that it is appropriate to relax or set aside the administrative-exhaustion requirement here. The doctrine of administrative exhaustion "is a judicial policy that promotes orderly procedures and good administration, but [it] has exceptions" and the exhaustion requirement for board orders, codified in ORS 144.335(1)(b), "remains flexible under general prudential exhaustion principles." *Tuckenberry*, 365 Or at 647, 652 (internal quotation marks omitted). Courts "may relax or set aside [the requirement] entirely, depending on the circumstances." *Id.* at 647.

For several reasons, this is an appropriate circumstance to relax or set aside the requirement. First, given the text of OAR 255-085-0040(1) and the content of the notice and the written-objections form sent to petitioner, it was at least unclear whether petitioner could raise the issue. Second, the issue is one of public interest, in that inaccurate classification of sex offenders undermines the purpose of the SONL statute, which is to help law enforcement prevent future sex crimes by enabling them to direct resources toward past sex offenders who present the highest risk of committing new sex crimes. *See Sohappy*, 329 Or App at 36-40 (discussing statutory purpose); *see also Tuckenberry*, 365 Or at 655 ("[P]etitioner raises important issues of public interest concerning the board's statutory authority to impose a special condition that purports to regulate all of a parolee's 'intimate' relationships and encounters."). Third, raising the issue to the board would have been futile, as the board presumably would have taken the same position that it did when the petitioner in *Sohappy* raised it. *See Tuckenberry*, 365 Or at 655 (concluding that raising the issue would have been futile, where another petitioner had raised the issue unsuccessfully in a different case decided the same day).

Ultimately, we are persuaded that, as in *Tuckenberry*, 365 Or at 655, it is appropriate to relax or set

aside the administrative-exhaustion requirement and proceed to the merits of petitioner's arguments.

The next question is whether, in the administrative context, relaxing or setting aside the exhaustion requirement means that we are limited to plain-error review. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may, in its discretion, consider a plain error."). We have expressed that understanding at least once since *Tuckenberry*, in *Stewart*, and petitioner provisionally requests plain-error review in light of *Stewart*.

For present purposes, we assume without deciding that we are limited to plain-error review. *See Stewart*, 312 Or App at 35 ("Even if we were to conclude that the exhaustion requirement should be relaxed under *Tuckenberry*, such that only preservation-of-error principles were in play, neither of the first two assigned errors is 'obvious and not reasonably in dispute' so as to qualify as plain error."); *but see also Tuckenberry*, 365 Or at 642 (proceeding to regular review after relaxing the administrative exhaustion requirement); *Forbus v. Board of Parole*, 309 Or App 296, 301, 482 P3d 95 (2021) (same). An error is "plain" when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013).

B.   *Merits*

Petitioner contends that the board has implausibly interpreted OAR 255-085-0020(1) as allowing it to disregard the Static-99R rules and research regarding sex-offense-free time in the community when conducting a risk assessment for purposes of setting a registrant's SONL. The alleged error is one of law, as well as being apparent on the record. *Vanornum*, 354 Or at 629. As for whether the legal point is obvious and not reasonably in dispute, we look to the case law as it exists at the time of our appellate decision. *State v. McKinney/Shiffer*, 369 Or 325, 333, 505 P3d 946 (2022). In other words, we look to *Sohappy*, as current case law directly on point.

OAR 255-085-0020(1) requires the board to "'use the Static-99R actuarial instrument on the Board's website *** along with attending rules and research found on http://www.static99.org/, to conduct a sex offender risk assessment'" of an adult male sex offender to set his SONL. In *Sohappy*, we held that the board's interpretation of OAR 255-085-0020(1) (Apr 29, 2020)—which is identical to the version of OAR 255-085-0020(1) at issue here—was implausible "and that the only plausible interpretation of the rule required the board to use the attending rules and research on the Static-99R website regarding sex-offense-free time in the community in setting petitioner's risk level." 329 Or App at 30. We further held that the board's use of its "Age Chart" in lieu of the Static-99R methodology violated the Coding Rules and was not a "permissible way to account for sex-offense-free time in the community." *Id*. at 51.

It would seem to follow that the legal points at issue in this case are now "obvious" and not reasonably in dispute. However, while petitioner's arguments in this case are essentially identical to the petitioner's arguments in *Sohappy*, and while some of the board's arguments in this case are the same as the board's arguments in *Sohappy* (and thus already addressed in *Sohappy*), the board has made three substantive arguments in this case that it did not make in *Sohappy*. We pause to address those arguments.[5]

First, in its answering brief in this case, the board argues that OAR 255-085-0020(1) "incorporates the Coding Rules *and the Age Chart*" and, relatedly, argues that, because "[t]he board's website included links to the Static-99R scoring sheet, the Coding Rules, *and the Age Chart*," a classifying agency "must" utilize the Age Chart when conducting a risk assessment under OAR 255-085-0020(1). (Emphases added.)

That is wrong. OAR 255-085-0020(1) requires the board to use "the Static-99R actuarial instrument on the

---

[5] This case was submitted on the same date as *Sohappy* and decided by the same panel as *Sohappy*. Although we limit our discussion in each opinion to the parties' arguments in that case, we were aware of the board's arguments in this case when deciding *Sohappy*, and vice versa. Because both cases were under consideration by the same panel at the same time, and given the nature of the legal issue (interpretation of a board rule), we effectively considered all of the board's arguments in both cases.

Board's website" and "the attending rules and research" on the Static-99R website to conduct the risk assessment. It is true, as the board points out, that the board's website contained a link to the board's Age Chart. *See Sohappy*, 329 Or App at 51 ("The 'Age Chart' is not something available on the Static-99R website. Rather, it is a tool developed by an unknown person and used by the board in scoring Items 1 and 2 of the Static-99R."). But the board putting a link to its Age Chart on its website does not mean that OAR 255-085-0020(1) "incorporates" the Age Chart or that classifying agencies "must" use the Age Chart. To the contrary, the only item on the *board's website* that the rule can be said to "incorporate" is the Static-99R actuarial instrument. OAR 255-085-0020(1) (requiring use of "the Static-99R actuarial instrument on the Board's website"). Furthermore, the rule unequivocally requires use of the Coding Rules on the Static-99R website—*see* OAR 255-085-0020(1) (requiring use of "attending rules and research found on http://www.static99. org/")—and using the Age Chart violates the Coding Rules. *Sohappy*, 329 Or App at 52 (so holding). We therefore reject the board's argument that OAR 255-085-0020(1) incorporates the Age Chart and requires use of the Age Chart.

Second, the board argues that, because ORS 163A.100 does not distinguish between existing registrants and new registrants, it makes sense for the board to interpret OAR 255-085-0020(1) as allowing it to disregard sex-offense-free time in the community in conducting risk assessments of existing registrants, given that new registrants do not have any sex-offense-free time.

It is true that ORS 163A.100 does not distinguish between existing registrants, *i.e.*, people who were first required to register before January 1, 2014, when the three-tiered system went into effect, and new registrants. It is also true that OAR 255-085-0020(1) requires classifying agencies to use the same risk assessment methodology for existing and new registrants. It does not follow, however, that OAR 255-085-0020(1) allows classifying agencies to disregard the Static-99R rules and research regarding sex-offense-free time in the community when classifying existing

registrants, because new registrants are just being released into the community and therefore have no comparable sex-offense-free time. The legislature directed the board to adopt a risk-assessment methodology, and the board adopted the Static-99R actuarial instrument and its attending rules and research. The Static-99R actuarial instrument and its attending rules and research require the consideration of sex-offense-free time to achieve a statistically sound risk assessment. *Sohappy*, 329 Or App at 48-50. The fact that some registrants do not have sex-offense-free time does not mean that the board can disregard it for those registrants who have it.[6] Indeed, it is precisely the existence of factual differences between registrants that causes them to present different levels of risk to the community and that allows for different risk classifications.

Third, the board argues that conducting a risk assessment that complies with the Static-99R Coding Rules and current research on the Static-99R website would result in classification decisions contrary to the legislative intent. That argument turns on the inclusion of several specific provisions in the 2013 legislation that created the three-tiered sex-offender registry: that registrants must wait until 10 years after release from supervision to request reclassification, ORS 163A.125(2)(e); that registrants previously classified as "predatory sex offenders" or "sexually violent dangerous offenders" are automatically classified as Level 3, Or Laws 2013, ch 708, § 7(2)(b)(A), (B), *compiled as a note after* ORS 163A.110; that any registrant initially classified as Level 3 can never be reclassified below Level 2, ORS 163A.125(3)(b); and that any registrant convicted of a person felony or person Class A misdemeanor since the index sex offense cannot be reclassified or relieved from registration, ORS 163A.125(3)(a).

It is true that the foregoing statutory provisions will keep certain past sex offenders on the registry for their

---

[6] As for the board's argument that the legislature expected the board to use existing Static-99R scores for any existing registrants who had them and that the legislature did not express any concern about the scores not reflecting sex-offense-free time, we already considered that argument in *Sohappy*. *See Sohappy*, 329 Or App at 47 n 10. It is also worth noting that a person's Static-99R score for the same index offense never changes (assuming it was accurately calculated), *id.* at 42-43, so the fact that an existing Static-99R *score* might be reused does not mean much.

entire lives and keep them classified at a higher SONL than would be supported by current Static-99R rules and research regarding the recidivism risk of past offenders who have lived in the community for an extended period of years without committing any new sex offenses. That may in part reflect the fact that research regarding the effect of sex-offense-free time in the community on sexual recidivism risk was much less developed in 2013. *Sohappy*, 329 Or App at 47 n 10. In any event, that is a legislative policy choice.

The existence of those statutory provisions does not mean, however, that the board can disregard its own rule in classifying existing registrants, based on a belief that, had the legislature realized that many existing registrants would have been living in the community for years without sexually reoffending and might pose little or no statistical risk of sexually reoffending by the time of classification, the legislature would have allowed for different risk assessment methodologies for new and existing registrants—with new registrants classified based on their current recidivism risk, but existing registrants classified based on their past recidivism risk (at the time of release).

Given the purpose of the statute—to assist law enforcement in preventing future sex offenses—it is unclear why the legislature would want existing registrants to be classified above their actual risk level based on outdated information. *See* ORS 163A.045(1) ("The purpose of ORS 163A.005 to 163A.235 is to assist law enforcement agencies in preventing future sex offenses."). But even accepting the board's premise as correct, the fact remains that the legislature enacted a statute that requires a present risk assessment, *Sohappy*, 329 Or App at 46-47, and the board adopted a rule requiring use of "the Static-99R actuarial instrument" and the "attending rules and research" on the Static-99R website to conduct that risk assessment and thus determine whether someone poses the "highest" risk of reoffending (Level 3), a "moderate" risk of reoffending (Level 2), or the "lowest" risk of reoffending (Level 1). As held in *Sohappy*, a present risk assessment conducted using the Static-99R actuarial instrument and the attending rules and research on the Static-99R website necessarily includes consideration of sex-offense-free time in the community.

We note that our holding is narrow. This is not a case where a registrant was classified as Level 3 based on a correct application of the Static-99R methodology, OAR 255-085-0020(1), or was classified as Level 3 automatically based on a legislative policy choice, Or Laws 2013, ch 708, § 7(2)(b)(A), (B), and now seeks reclassification or relief from registration, such that the statutory limitations on reclassification and relief from registration are at issue. See 329 Or App at 41. This is a case about a risk assessment conducted under OAR 255-085-0020(1), specifically the version of OAR 255-085-0020(1) in effect on January 10, 2020. The only question before us is whether the board plausibly interpreted that rule as allowing it to disregard sex-offense-free time when conducting a risk assessment using the Static-99R actuarial instrument and attending rules and research on the Static-99R website. We conclude that the board's interpretation of its rule is implausible, for the reasons stated in Sohappy and herein.

Having addressed the arguments that the board did not make in *Sohappy* but makes in this case, we reaffirm our holdings in *Sohappy* and conclude that the error in this case qualifies as plain. We exercise our discretion to correct the plain error, for largely the same reasons discussed in the administrative-exhaustion section. *See* 329 Or App at 35-36; *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (providing a wide-ranging and nonexclusive list of considerations that may be relevant in deciding whether to exercise discretion to correct a plain error). The critical role that accurate risk classification plays in meeting the statutory goal of having a sex-offender registry that assists law enforcement in preventing future sex offenses, ORS 163A.045(1), is a particularly significant consideration.

## IV.  CONCLUSION

In sum, we reject petitioner's arguments regarding the board's scoring of the "stranger victim" and "intimate partner" items on the Static-99R assessment. However, consistent with our holding in *Sohappy*, 329 Or App at 30, we agree with petitioner that the board misinterpreted OAR 255-085-0020(1) (Jan 10, 2020) as allowing it to disregard the Static-99R rules and research regarding sex-offense-free

time in the community as relevant to sexual recidivism risk. We therefore reverse and remand.

      In doing so, we note that, unlike the petitioner in *Sohappy*, petitioner in this case received a lower score on Item 1 of the Static-99R due to the board's use of its "Age Chart," so, if the board applies the same rule again,[7] it will need to rescore petitioner on Item 1. Further, unlike the petitioner in *Sohappy*, petitioner in this case has committed nonsexual offenses since release on his index sex offense, which the board may consider as relevant to his risk of sexual recidivism in a manner consistent with the Static-99R methodology. *See Sohappy*, 329 Or App at 44 & n 9 (discussing the Static- 99R's approach to nonsexual offenses committed after the index sex offense).

      Reversed and remanded.

---

[7] Neither party has taken a position on which version of OAR 255-085-0020 should apply on remand. We express no opinion on that issue. We simply note factual differences between this case and *Sohappy* that would be relevant under the version of OAR 255-085-0020 addressed in this opinion.