Argued and submitted October 1, 2019, affirmed August 12, petition for review denied December 10, 2020 (367 Or 290)

LAVONT E. BAKER,
*Petitioner,*

*v.*

BOARD OF PAROLE AND
POST-PRISON SUPERVISION,
*Respondent.*

Board of Parole and Post-Prison Supervision
A168478

473 P3d 83

Petitioner seeks judicial review of his classification by the Board of Parole and Post-Prison Supervision (board) as a Notification Level 3 (high risk) sex offender. To determine a person's sex offender registration requirements upon release from prison, the board uses the "Static-99R risk assessment" to calculate a final score corresponding with one of three sex offender registration levels. Petitioner challenges the board's application of the Static-99R assessment, arguing that it miscalculated his final score. He specifically argues that the board committed legal error and abused its discretion by misinterpreting the assessment's scoring rules, and that it made findings unsupported by substantial evidence. *Held*: The board did not err. The board did not misinterpret the Static-99R risk assessment's scoring rules, and each of its findings were supported by substantial evidence.

Affirmed.

Nicole S. Thompson argued the cause and filed the briefs for petitioner.

E. Nani Apo, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before DeHoog, Presiding Judge, and Egan, Chief Judge, and Mooney, Judge.*

MOONEY, J.

Affirmed.

_____
\* Egan, C. J., *vice* Hadlock, J. pro tempore.

## MOONEY, J.

Upon his release from prison, petitioner was required to be evaluated and classified as a Level 1, Level 2, or Level 3 sex offender. His classification would, in turn, determine the level of reporting that would be required of him as a sex offender. Pursuant to its regulations, the Board of Parole and Post-Prison Supervision (board) used the "Static-99R assessment" tool to evaluate petitioner and classify him as a Level 3 (High Risk) sex offender. Petitioner seeks judicial review of the board's final order under ORS 144.335(1), assigning error to its calculation of his Level 3 classification. He advances three arguments as to why the board incorrectly determined his final score. For the reasons explained below, we reject each of them and affirm the board's order.

Because petitioner exhausted his administrative remedies, the board's final order is reviewable on the bases provided in ORS 183.482(8). ORS 144.335(3). Under 183.482 (8)(a), we review that order to determine whether the board "erroneously interpreted a provision of law," here, its own rule—the Static-99R assessment tool—"and *** a correct interpretation compels a particular action[.]" *See Gadalean v. SAIF*, 364 Or 707, 714, 439 P3d 965 (2019) (explaining that, under ORS 183.482(8)(a), a question of law is reviewed for legal error). When determining whether the board correctly interpreted its own rule, we defer to the board's interpretation, so long as its interpretation is not inconsistent with the "wording of the rule itself, or with the rule's context, or with any other source of law[.]" *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994). Under ORS 183.482(8)(b), we "shall remand the order to the agency" if we find that its exercise of discretion is

"(A)  Outside the range of discretion delegated to the agency by law;

"(B)  Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)  Otherwise in violation of a constitutional or statutory provision."

Finally, under ORS 183.482(8)(c),we will set aside the final order if it is unsupported by substantial evidence in the record.

The facts of this case are largely procedural and undisputed. ORS 163A.100 required the board to classify petitioner as a Level 1, 2, or 3 sex offender upon his 2017 release from prison. As part of that evaluative process, petitioner filled out and returned a questionnaire used by the board to evaluate and classify sex offenders. The board reviews both the questionnaire and evidence of the offender's criminal and personal history to tabulate a final score on the Static-99R assessment, which corresponds with one of Oregon's three sex offender notification levels under ORS 163A.100. The board ultimately scored petitioner as a 6, which was the minimum score required to classify him as a "Level 3 (High Risk)" sex offender. ORS 163A.100(3). After exhausting his administrative remedies challenging that classification, he now seeks judicial review of the board's final order, assigning error to its calculation of his score.

Because petitioner challenges the board's calculations under different scoring items on the Static-99R assessment, we discuss additional facts below as we address each of his arguments. We begin, however, by contextualizing the board's classification of petitioner through an overview of the relevant statutory and regulatory framework. ORS 163A.100 requires the board to "adopt by rule a sex offender risk assessment methodology for use in classifying sex offenders." The "[a]pplication of the risk assessment methodology to a sex offender must result in placing the sex offender in one of the following levels:

"(1)   A level one sex offender who presents the lowest risk of reoffending and requires a limited range of notification.

"(2)   A level two sex offender who presents a moderate risk of reoffending and requires a moderate range of notification.

"(3)   A level three sex offender who presents the highest risk of reoffending and requires the widest range of notification."

ORS 163A.100. The board must classify a person convicted of a sex crime upon discharge, parole, or release from a state correctional facility. ORS 163A.110(2)(a)(A), (B). The level of classification determines the intensity of the sex offender's reporting obligation. ORS 163A.100. The purpose of the sex offender reporting obligation is to "assist law enforcement agencies in preventing future sex offenses." ORS 163A.045(1).

To carry out its statutory mandate of classifying sex offenders upon release from custody, the board adopted OAR 255-085-0020, which states, in part:

"(1)   For classification and community notification for adult male registrants, the classifying agency shall use the Static-99R actuarial instrument on the Board's website at http://www.oregon.gov/BOPPPS along with attending rules and research found on http://www.static99.org/, to conduct a sex offender risk assessment. Classifying agencies may score registrants using information from previous Static-99 or Static-99R assessments. Classifying agencies shall score and place each registrant into one of the following levels:

"(a)   Notification Level 1: Low risk;

"(b)   Notification Level 2: Moderate risk; or

"(c)   Notification Level 3: High risk."

The Static-99R risk assessment's comprehensive list of coding rules require the offender's evaluator—the board—to review his past behaviors and tabulate scores based on whether those past behaviors correlate with a likelihood of reoffending. Phenix *et al*, *Static-99R Coding Rules* (2016), *available at* http://static99.org/pdfdocs/Coding_manual_2016_InPRESS.pdf (accessed Aug 4, 2020) (Coding Rules). The evaluator reviews a list of 10 items that have been shown to be associated with sexual recidivism and then scores the offender based on whether he meets the item's criteria. The items consist of (1) the person's age at release from the index sexual offense;[1] (2) whether the person has ever lived with an intimate partner for two continuous years; (3) prior convictions related to nonsexual violence;

---

[1] An "index offense," for the purposes of the Static-99R assessment, refers to the offender's most recent crime, which, in this case, was petitioner's charge of sexual exploitation of a minor in Arizona. Coding Rules at 38.

(4) prior sexual violence convictions; (5) prior sex offenses; (6) prior sentencing dates; (7) prior convictions for noncontact sex offenses; (8) any unrelated victims; (9) any stranger victims; and (10) any male victims.

Each item contains different scoring criteria and available scores. For example, if an offender "has never had an intimate adult relationship of two years' duration," the evaluator would score the person a "1" on that item. Coding Rules at 49. It is possible for an offender to score up to a 3 on certain items, while other items allow for reductions in the score by 1 point (*i.e.*, an item score of -1). If an offender's total score is equal to or greater than 6, as was petitioner's, the board classifies the offender as "High risk." *Id.* at 12.

Petitioner argues that the board made three separate errors in its application of the Static-99R assessment to him. First, he argues that the board committed legal error when it classified his 1986 conviction for first-degree kidnapping as both a "prior non-sexual violence conviction" (item 4) and as a prior sex offense (item 5). Second, he argues that the board abused its discretion when it did not attempt to contact his former partner to confirm his assertion that he lived with her for two years, and, because it did not, the board incorrectly gave him a score of 1 (item 2). Third, he argues that the board's scores under items 5 and 6 are not supported by substantial evidence "because there was no evidence in the record of any juvenile cases," which were relevant to its scoring on those items. For reasons explained below, we reject each of petitioner's arguments.

First, petitioner argues that the board legally erred in double-counting his 1986 conviction for first-degree kidnapping as both a "Prior Non-Sexual Violence Conviction" (item 4) and as a "Prior Sex Offense" (item 5). That is so, he argues, because the state charged him with Kidnapping I under ORS 163.235(1)(c), which required proof of intent "to cause physical injury to the victim," rather than under ORS 163.235(1)(e), which required proof of intent to further the commission of rape or sodomy. As explained below, we conclude that the board did not commit legal error; further, to the extent petitioner can be understood to also raise a

substantial evidence challenge to the board's factual findings, we reject that contention.

Under item 4 of the Static-99R assessment, an offender receives one point toward his final score if his "criminal record shows a separate conviction for a non-sexual violent offence prior to detection for the index offence[.]"[2] Coding Rules at 58. Under item 5 of the assessment, the offender receives a score of 3 if, among other things, he was convicted of at least 4 *sexual* offenses before the index offense. *Id.* at 63.

The Coding Rules for item 4 of the assessment explicitly allow for an offender's prior crime to be counted in both items 4 and 5, as "both a sex offence and a non-sexual violence offence." *Id.* at 60. The rules provide an example of a situation in which the evaluator would count the crime as both a sex offense and a nonsexual violence offense:

> "If you have an individual convicted of Kidnapping/Forcible Confinement (or a similar offence) and it is known, based on the Balance of Probabilities,[3] this was a sex offence—this offence may count as the index sex offence or you may score this conviction as a sex offence under prior sex offences, whichever is appropriate given the circumstances. *These convictions would also count as non-sexual violence* [(item 4)]."

*Id.* at 61 (emphasis added). In that example, if the evaluator finds, by a preponderance of evidence, that the offender's behavior in a kidnapping/forcible confinement case "was sexual," the conviction "would count as one sex offence * * * and one Non-Sexual Violence offence." *Id.* It also counts "[i]f the evaluator knows that the Forcible Confinement was directed toward the victim of the sex offence[.]" *Id.* If, on the other hand, the nonsexual violence was "against an incidental or accidental victim[,] then it does not count[.]" *Id.* The Coding Rules provide one more example in a forcible confinement/sexual assault case:

---

[2] We note that the Coding Rules use the term "offence" interchangeably with the term "offense."

[3] The Static-99R assessment defines "Balance of Probabilities" as the "preponderance of evidence" standard. Coding Rules at 19.

"[F]orcible confinement of the victim while committing the sex offence would count as two sex offences *** and one Non-Sexual Violence ***. In contrast, forcible confinement of the victim's boyfriend in another room would count only as non-sexual violence (the Sexual Assault would still count as a sex offence)."

*Id.*

The rules for item 4 make clear that whether a prior offense counts as both "non-sexual violence" and a "sexual offense" depends on the specific facts of the crimes committed; if the "non-sexual" crime involves the same victim as the sex crime and the offender committed the nonsexual crime to effect the sexual offense, the assessment allows the evaluator to score the crime both as prior nonsexual violence (item 4) and as a prior conviction for sexual offenses (item 5). When that is the case, the otherwise nonsexual crime (in this case, kidnapping) can count as both nonsexual violence under item 4 and as a sexual offense under item 5. *Id.*

In this case, the board determined that petitioner's kidnapping conviction was "directed toward the victim of" his sexual offenses. Thus, it scored petitioner as a 1 on item 4, counting his kidnapping conviction as a nonsexual violence, and a 3 on item 5, counting four of his previous convictions—including the kidnapping conviction—as prior sex offenses. Because the Coding Rules explicitly allowed the board to count petitioner's kidnapping convictions under both item 4 and item 5 if it found that his kidnapping conviction was "directed toward the victim of" his sexual crimes, the board did not commit legal error when it double-counted that conviction. *See* ORS 183.482(8)(a) (we review the board's order to determine whether the board "erroneously interpreted a provision of law and *** a correct interpretation compels a particular action").

Further, substantial evidence in the record supports the board's finding that the facts underlying petitioner's 1986 convictions closely match the example provided in the coding rules, and, thus, satisfy the Coding Rules: Petitioner's indictment and presentence investigation (PSI) report indicate that he was convicted of kidnapping, rape, and sodomy after he kidnapped his victim *in order to* commit rape

and sodomy. Thus, the board's findings on this issue are supported by substantial evidence.[4] *See* ORS 183.482(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding.").

We turn to petitioner's second argument. Under item 2 of the Static-99R assessment, an offender receives one point if he "has never had an intimate adult relationship of two years' duration." Coding Rules at 49. Petitioner received a score of 1 on this item because the board found, by a preponderance of evidence, that petitioner had not been in a continuous relationship for two years. It did so after petitioner claimed that he had, in fact, lived with an intimate partner between 2004 and 2006. He provided the board with her contact information and requested that it contact her, but it did not. Instead, it considered the documentary evidence before it, including a report from his parole officer created between 2004 and 2005. The report indicated that petitioner lived with his grandmother for at least some portion of that period, and it included an entry in which petitioner denied having any intimate partners for at least part of that time. From that evidence, the board found that petitioner had not lived with a sexually intimate partner for at least two years.

On review, we understand petitioner to argue that the board abused its discretion when it failed to contact his former intimate partner and that its decision is not supported by substantial evidence. Our abuse-of-discretion review is limited in this context; we review the agency's exercise of discretion only to determine whether it was "[o]utside the range of discretion delegated to the agency by law," ORS 183.482(8)(b)(A), "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice," ORS 183.482(8)(b)(B)," or "[o]therwise in violation of a constitutional or statutory provision," ORS 183.482 (8)(b)(C). Accordingly, as argued in this case, we review the board's decision to determine whether its particular exercise

---

[4] That the state did not specifically charge petitioner with kidnapping under ORS 163.235(1)(e) is not relevant when substantial evidence in the record otherwise supports a finding that petitioner did, in fact, kidnap the victim in order to rape her.

of discretion conformed to its own rules and is supported by substantial evidence in the record.

Because the board's exercise of discretion conformed to the Coding Rules provided by the Static-99R assessment, and because its finding is supported by substantial evidence, the board did not err by declining to contact petitioner's former intimate partner. The Coding Rules state that the evaluator "*should* make an attempt to confirm the offender's relationship history through collateral sources and official records." Coding Rules at 49 (emphasis added). The rules also state that it is "greatly preferred" that the evaluator "confirm the existence of [a] relationship through collateral contacts or official records," especially "if the assessment is being carried out in an adversarial context where the offender would have a real motive to pretend to a nonexistent relationship." *Id.*

Notwithstanding the Coding Rules' recommendation that the evaluator contact collateral sources when an offender provides them, nothing in those rules creates an affirmative duty to do so. *Id.* The rules' use of the words "should attempt" and "greatly preferred" indicate that the board enjoys at least some discretion over the decision to contact a collateral source. *Id.* Because the board does have that discretion, petitioner cannot demonstrate that the board acted inconsistently with an agency rule, ORS 183.482 (8)(b)(B). We therefore cannot conclude that the board was *required to* contact petitioner's collateral source. *Id.*; *see also Gordon v. Board of Parole*, 343 Or 618, 637, 175 P3d 461 (2007) (explaining that we remand an order to the board under ORS 183.482(8)(b)(B) only if its exercise of discretion was inconsistent with an official agency policy, position, or practice, and it does not satisfactorily provide a justifiable reason for the inconsistency).

Moreover, the board's finding related to item 2 is supported by substantial evidence in the record because a reasonable person could conclude, from his probation records, that he did not have an intimate relationship for at least a two-year period. *See* ORS 183.482(c) ("Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to

make that finding."). Those records create a plausible inference that petitioner lived without an intimate partner for at least a portion of the two-year period at issue. Accordingly, the board did not err by declining to contact petitioner's collateral source and by scoring petitioner a 1 on item 2.

In petitioner's final challenge to the board's order, he argues that the record lacked substantial evidence of (1) a juvenile Sex Abuse I adjudication, which the board used to calculate his scores under the "Prior Sex Offense" item (item 5); and (2) the existence of five other juvenile adjudications, which the board used to calculate his scores under the "Prior Sentencing Dates" item (item 6). He also argues that the PSI reports, which reflect petitioner's pre-1986 adjudications and convictions, were legally insufficient under the Coding Rules to support the board's calculation of the number of previous offenses and sentencing dates because those reports contain only "cursory mentions to the juvenile cases" and are "incongruous and incomplete." Further, by arguing that "there was no documentation of the juvenile case to support" the conviction for Sex Abuse I in the record, we also understand petitioner to argue that the board committed legal error by relying on the PSI reports prepared by the Oregon Correction's Division at the request of the circuit court for consideration in sentencing petitioner for his prior convictions because the PSI reports did not constitute an official record. We reject that argument because the coding rules explicitly allow the board to count petitioner's juvenile adjudications as prior sexual offenses and sentencing dates if the record contains substantial supporting evidence of those adjudications.

To score the "Prior Sex Offenses" and "Prior Sentencing Dates" items, the Coding Rules require the evaluator to "have access to an official criminal record as compiled by police, court, or *correctional authorities.*" Coding Rules at 68 (emphasis added). A "professional report that mentions a previous charge/conviction" is sufficient to satisfy that requirement "if it is considered credible that an official record did/does in fact exist and has been obtained by a professional during a previous contact (e.g., if juvenile criminal records are no longer available, but a previous probation

report mentions accessing that record and notes a charge or conviction)." *Id.* at 20. The offender may also supplement those reports through self-reporting. *Id.* at 9. The official documents must confirm that the offender appeared in court to be sentenced on a particular date, and that the offender was provided "due process, resulting in * * * an admission or finding of guilt and * * * a sanction." *Id.* at 29. The assessment tool provides that "anything that counts as a conviction also counts as a sentencing date." *Id.* at 36. And, although juvenile delinquency proceedings are not considered criminal prosecutions, *State v. Thompson*, 166 Or App 370, 382, 998 P2d 762 (2000), the Coding Rules explicitly allow for "juvenile offences" to count as convictions, so long as there is "official documentation available confirming them," Coding Rules at 29.

The PSI reports qualify as "an official criminal record as compiled by police, court, or correctional authorities." Coding Rules at 68. The reports note multiple charges, convictions, and adjudications, along with their associated dates and dispositions. The board did not commit legal error by using the reports to calculate petitioner's prior sex offence and sentencing date scores.

We turn now to petitioner's substantial evidence argument on this point. We conclude that a reasonable person could find, based upon the PSI reports as supplemented by petitioner's self-report of a prior adjudication for Sexual Abuse I, that petitioner had four or more convictions for sex offenses under item 5 (with a corresponding score of 3), and that he had six or more prior sentencing dates under item 6 (with a corresponding score of 1). ORS 183.482(8).

The two PSI reports in the record, which were completed in 1986 and 1993, contain evidence that petitioner had five juvenile adjudications between 1982 and 1984. As already discussed, one of those adjudications was for Sexual Abuse I. Each of the adjudications had its own separate sentencing or disposition date. The reports also demonstrate that petitioner was convicted of various crimes in 1986 and 1993, with a total of two sentencing dates for those convictions. And those reports both reference petitioner's juvenile court records, indicating that those records were available

and reviewed. Further, petitioner confirmed the accuracy of those reports when he told the board that "I have a Juvenile 'Adjudication' for sex abuse I," and "6 sentencing dates as a Juvenile were Non-Sexual 'Adjudications.'"[5]

The PSI reports, as supplemented by petitioner's own report, demonstrate that the total number of prior sentencing dates adds up to 7, which results in a score of 1 on item 6. And, in addition to his three adult convictions for sex offenses (Rape I, Sodomy I, Kidnapping I), his one juvenile adjudication for Sexual Abuse I brings his total number of "prior sex offenses" to 4, which results in a score of 3 on item 5. The board did not err in its use of the PSI reports as supplemented by petitioner's self-report to calculate petitioner's scores under items 5 and 6. We conclude also that there was substantial evidence in the record to support the board's calculation of petitioner's Static-99R assessment scores and classification of petitioner as a Level 3 sex offender.

Affirmed.

---

[5] Petitioner raises a number of alleged discrepancies contained in the PSI reports. For example, petitioner points to the board noting an adjudication for "Sexual Abuse II" on 7/9/1982 and then noting in a table later on the same page a sentencing date for an adjudication for Sexual Abuse I on 7/9/1982. The PSI report on which the board relied for those findings identified the 7/9/1982 adjudication as being for Sexual Abuse I. In his written objections to the board's initial order, petitioner reported that "I have a juvenile 'adjudication' for Sexual Abuse I." We think the only reasonable resolution of the discrepancy in the board's findings is that the reference to "Sexual Abuse II" was a typographical error; that is to say, a scrivener's error. We think it important to note also that regardless of whether the adjudication was for Sexual Abuse I or Sexual Abuse II, it still qualifies as a "prior sex offence" for item 5 on the assessment tool. Lastly, because we conclude that the PSI reports constitute substantial evidence of petitioner's juvenile adjudication for Sex Abuse I, we reject petitioner's remaining arguments related to any alleged discrepancies in the PSI reports.